**The STATE OF OHIO, Appellee,**

v.

**WILSON, Appellant.**

[Cite as *State v. Wilson*, 182 Ohio App.3d 171, 2009-Ohio-1681.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 91091.

Decided April 9, 2009.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Steven A. Dever, Andrew J. Nichol, and Lisa Keiz Williamson, Assistant Prosecuting Attorneys, for appellee.

Timothy R. Sterkel, for appellant.

LARRY A. JONES, Judge.

{¶ 1} Defendant-appellant, Eric Wilson, appeals his conviction. Finding some merit to the appeal, we affirm in part and reverse in part.

{¶ 2} In 2007, Wilson was charged with murder, attempted murder, two counts of felonious assault, two counts of aggravated robbery, kidnapping, rape, and two counts of attempted rape. Each count was accompanied by a one- and three-year firearm specification, and the kidnapping count additionally contained a sexual-motivation specification. Wilson was also charged with having a weapon while under a disability. Before trial, the state dismissed the two counts of aggravated robbery. The matter then proceeded to a jury trial.

{¶ 3} The following evidence was adduced at trial.

{¶ 4} On September 1, 2006, Wilson, a drug trafficker, was in his car driving around the area of East 59th Street and Francis Avenue selling drugs. He stopped his car to meet with some buyers when James Yhonquea ("Yhonquea") walked up, pulled out his gun, and put it against Wilson's head. Yhonquea took Wilson's drugs, money, and cell phone and started to run down East 59th Street. Wilson jumped out of his car and started to run after Yhonquea. Wilson began shooting at Yhonquea and fired off eight rounds, hitting a parked car and a house. Yhonquea returned fire, hitting Wilson's car.

{¶ 5} Asteve ("Cookie") Thomas, a 12–year old girl who lived in the neighborhood, was walking home from the corner store with her friends when one of the bullets shot from Yhonquea's gun struck her in the chest. She managed to walk to a neighbor's house, collapsed, and died approximately 30 minutes later. Police recovered multiple bullets and casings from the scene.

{¶ 6} Wilson eventually caught up with Yhonquea and shot him in the back. Wilson then recovered his drugs, money, and cell phone. Wilson proceeded back up East 59th Street and, as an onlooker testified, appeared calm: "He was calm. Just calm. He was like ice." The onlooker also testified that Wilson told him, "I got my s* * * back." When Wilson reached his car, he told his passenger, April Macon, "[I]f the dude would never took my phone, I wouldn't have chased him down."

{¶ 7} Wilson fled the scene with Macon, who testified that she told Wilson as they were leaving that a little girl had been shot. Wilson drove Macon to a friend's house and turned on the news. Macon testified that shortly after Wilson found out that the little girl had died, he forced Macon to perform oral sex on him and also attempted to perform anal sex on her. Wilson then fled Cleveland.

{¶ 8} Ten days later, police in Montana tried to effectuate a traffic stop on Wilson; he led police on a high-speed chase that ended when he ran a red light

and crashed into two cars. He jumped out of the vehicle, ran, and threw his gun to the ground. Police were able to apprehend him and discovered that the recovered gun was the same one Wilson had used in the shootout.

{¶ 9} Yhonquea recovered from the gunshot wound and was charged separately from Wilson. *State v. Yhonquea*, Cuyahoga C.P. No. CR–502058.

{¶ 10} The jury convicted Wilson of the lesser included offense of involuntary manslaughter with gun specifications, two counts of felonious assault with gun specifications, and having a weapon while under a disability. He was acquitted of all other charges.

{¶ 11} The court sentenced Wilson to a total of 35 years in prison.

{¶ 12} Wilson now appeals, raising seven assignments of error, some of which will be combined for review.

## R.C. 2945.34

{¶ 13} In the first assignment of error, Wilson argues that the trial court erred when it failed to properly admonish the jury in accordance with R.C. 2945.34.

{¶ 14} R.C. 2945.34 states:

{¶ 15} "If the jurors are permitted to separate during a trial, they shall be admonished by the court not to converse with, nor permit themselves to be addressed by any person, nor to listen to any conversation on the subject of the trial, nor form or express any opinion thereon, until the case is finally submitted to them."

{¶ 16} Wilson argues that there were numerous instances during breaks in trial when the trial court failed to admonish the jury. Defense counsel made no objection during trial; thus, he has waived all but plain error. Pursuant to Crim.R. 52(B), this court may, in the absence of objection, notice plain errors or defects that affect a defendant's substantial rights. But to rise to the level of plain error, the alleged error must have substantially affected the outcome of the trial. *State v. Slagle* (1992), 65 Ohio St.3d 597, 604–605, 605 N.E.2d 916.

{¶ 17} In this case, we find that the trial court adequately admonished the jury on many occasions throughout trial. Moreover, Wilson has not argued how he was prejudiced by any omission. Therefore, we do not find that the trial court committed plain error by failing to admonish the jury every time the court recessed the jury.

{¶ 18} The first assignment of error is overruled.

## Sufficiency and Manifest Weight of the Evidence

{¶ 19} In the second assignment of error, Wilson argues that the trial court erred when it denied his motion for acquittal for murder. In the third assignment of error, Wilson argues that his conviction for involuntary manslaughter was against the manifest weight of the evidence.

{¶ 20} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. Wilson argues that there was insufficient evidence that he committed murder because Yhonquea caused Thomas's death. Wilson, however, was not convicted of murder. Therefore, the issue of whether there was sufficient evidence to find him guilty of murder is moot.

{¶ 21} Next, Wilson argues that his conviction for involuntary manslaughter was against the manifest weight of the evidence. While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest-weight challenge questions whether the state has met its burden of persuasion. *Thompkins* at 390, 678 N.E.2d 541. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. at 387, 678 N.E.2d 541.

{¶ 22} Wilson was convicted of involuntary manslaughter, in violation of R.C. 2903.04(A), which states that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." The indictment listed the underlying felonies as drug trafficking and having a weapon while under a disability.

{¶ 23} Wilson's sole argument is that he should have not been convicted of involuntary manslaughter because he was not the cause of Thomas's death. He argues that Yhonquea was the sole cause of Thomas's death because the forensic evidence proved that it was a bullet from Yhonquea's gun that struck and killed Thomas.

{¶ 24} In *State v. Robinson* (1994), 98 Ohio App.3d 560, 574, 649 N.E.2d 18, quoting *State v. Chambers* (1977), 53 Ohio App.2d 266, 272–273, 7 O.O.3d 326, 373 N.E.2d 393, we stated:

{¶ 25} " 'Having found that the Ohio legislature intended to adopt the proximate cause theory of criminal liability, as to R.C. 2903.04, we hold that when a person, acting individually or in concert with another, sets in motion a sequence of events, the foreseeable consequences of which were known or should have been known to him at the time, he is criminally liable for the direct, proximate and reasonably inevitable consequences of death resulting from his original criminal act.' See, also, *State v. Younger* (May 31, 1990), Cuyahoga App. No. 57080 [1990 WL 71529]."

{¶ 26} A defendant cannot be held responsible for consequences that no reasonable person could expect to follow from his conduct, but he will be held responsible for consequences that are direct, normal, and reasonably inevitable when viewed in the light of ordinary experience. *State v. Losey* (1985), 23 Ohio App.3d 93, 95, 23 OBR 158, 491 N.E.2d 379. It is not necessary that the defendant "be in a position to foresee the precise consequence of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct." Id. at 96, 23 OBR 158, 491 N.E.2d 379.

{¶ 27} Only a reasonably unforeseeable intervening cause will absolve one of criminal liability in this context. *State v. Lovelace* (1999), 137 Ohio App.3d 206, 215, 738 N.E.2d 418. "[W]hen the result varied from the harmed intended or hazarded, it must be determined that the result achieved was not so extraordinary or surprising that it would be simply unfair to hold the defendant criminally responsible for something so unforeseeable." Id. at 216, 738 N.E.2d 418, citing LaFave & Scott, Criminal Law (1972), Section 35, 246.

{¶ 28} In *State v. Ervin*, Cuyahoga App. No. 87333, 2006-Ohio-4498, 2006 WL 2507563, ¶ 25, quoting *State v. Dixon* (Feb. 8, 2002), Montgomery App. No. 18582, 2002 WL 191582, *5, we stated:

"Under the 'proximate cause theory,' it is irrelevant whether the killer was the defendant, an accomplice, or some third party such as the victim of the underlying felony or a police officer. Neither does the guilt or innocence of the person killed matter. [A] Defendant can be held criminally responsible for the killing regardless of the identity of the person killed or the identity of the person whose act directly caused the death, so long as the death is the 'proximate result' of Defendant's conduct in committing the underlying felony offense; that is, a direct, natural, reasonably foreseeable consequence, as

opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience."

See also *Chambers,* 53 Ohio App.2d 266, 7 O.O.3d 326, 373 N.E.2d 393; *Moore v. Wyrick* (C.A.8, 1985), 766 F.2d 1253; *State v. Bumgardner* (Aug. 21, 1998), Greene App. No. 97–CA–103, 1998 WL 892120.

{¶ 29} Again, the underlying felonies in this case were predicated upon drug trafficking and having a weapon while under a disability. To establish proximate causation, the state presented evidence that Thomas's death would not have occurred that evening if Wilson had not been armed and selling drugs. As courts have acknowledged, drug transactions are dangerous endeavors that can often lead to robbery or deadly violence. *State v. Marshall,* 175 Ohio App.3d 488, 2008-Ohio-955, 887 N.E.2d 1227. The investigating detective, Joseph Chojnowski, testified that of the 137 homicides that occurred in the city of Cleveland in 2007, over 100 were drug-related. Wilson, who was prohibited from legally carrying a gun due to a prior conviction, armed himself to conduct his drug business. On cross-examination, Chojnowski testified: "If [Wilson] would not have come in that neighborhood to sell [drugs], we wouldn't be here. If [he] didn't take it upon himself to get out of the car with a handgun and chase after somebody, we wouldn't be here, and [Thomas] would still be alive." Chojnowski further testified that he believed that the evidence showed that Wilson was the first person to shoot his gun.

{¶ 30} It is not necessary that Wilson be able to foresee the precise consequences of his conduct; only that the consequences be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk that he created. *Lovelace,* 137 Ohio App.3d 206, 738 N.E.2d 418; *Dixon,* 2002 WL 191582; *State v. Losey* (1985), 23 Ohio App.3d 93, 23 OBR 158, 491 N.E.2d 379. Causal issues are normally left to the collective wisdom of the jury. *Lovelace.* We find that there is no impediment in law to the jury's finding that Thomas's death was a foreseeable consequence of Wilson's drug trafficking; thus, we are left to determine only whether the jury lost its way in reaching this conclusion. We hold that it did not. Wilson is precluded from escaping responsibility in this case for what followed from his conduct of carrying a gun and selling drugs; thus, we agree that Thomas's death was a foreseeable consequence of Wilson's actions.

{¶ 31} Therefore, we conclude that Wilson's conviction for involuntary man-slaughter was not against the manifest weight of the evidence.

{¶ 32} The second and third assignments of error are overruled.

Jury Instructions

{¶ 33} In the fourth assignment of error, Wilson claims that the trial court erred in granting the state's request to instruct the jury on involuntary manslaughter.

{¶ 34} The Supreme Court of Ohio has adopted a two-part test to determine whether a jury instruction on a lesser included offense is necessary. *State v. Kidder* (1987), 32 Ohio St.3d 279, 280–281, 513 N.E.2d 311. First, the trial court must determine whether the offense on which the instruction is requested is a lesser included offense of the crime charged. Id., citing *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus. Second, the trial court must determine whether the evidence adduced at trial would support an instruction on the lesser included offense. Id. at 281, 533 N.E.2d 294.

{¶ 35} A trial court must instruct a jury regarding a lesser included offense when the evidence presented at trial would support it. *State v. Thomas* (1988), 40 Ohio St.3d 213, 216, 533 N.E.2d 286. In other words, a trial court must charge the jury on a lesser included offense "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." Id. In determining whether the evidence reasonably supports the lesser included offense instruction, "[t]he persuasiveness of the evidence regarding the lesser included offense is irrelevant." *State v. Wilkins* (1980), 64 Ohio St.2d 382, 388, 18 O.O.3d 528, 415 N.E.2d 303. Instead, the trial court must give the lesser included offense instruction "[i]f under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense." Id.

{¶ 36} In this case, we find that the trial court did not err in instructing the jury on involuntary manslaughter. When comparing murder as charged in this case to involuntary manslaughter, it is the mental state of the accused that distinguishes one offense from the other. *State v. Brown* (Feb. 29, 1996), Cuyahoga App. No. 68761, 1996 WL 86627. The offense of murder requires proof that the accused acted purposely, or with specific intent to cause the death of another. See R.C. 2903.02; 2901.22(A). The culpable mental state of involuntary manslaughter is supplied by the underlying offense, in this case, "knowingly." See *State v. Campbell* (1991), 74 Ohio App.3d 352, 358–359, 598 N.E.2d 1244. Thus, an instruction on involuntary manslaughter should be given when, on the evidence presented, the jury could reasonably find against the state on the element of purpose, and for the state on the accused's act of killing

another. *Brown*; *State v. Coulter* (1992), 75 Ohio App.3d 219, 225–226, 598 N.E.2d 1324.

{¶ 37} In this case, we find that the trial court correctly instructed the jury on involuntary manslaughter because, in viewing the evidence, it was possible for the jury to find that Wilson acted knowingly instead of purposely in causing Thomas's death.

{¶ 38} Therefore, the fourth assignment of error is overruled.

### Reckless Homicide

{¶ 39} In his fifth assignment of error, Wilson argues that the trial court erred in failing to instruct the jury on reckless homicide. In the seventh assignment of error, Wilson contends that he was denied effective assistance of counsel because his attorney failed to request an instruction on reckless homicide. Wilson claims under both assigned errors that there is a reasonable probability that if the jury had been permitted to consider the charge of reckless homicide, the result of the trial would have been different.

{¶ 40} Reckless homicide, pursuant to R.C. 2903.041, is a lesser included offense of murder as defined in R.C. 2903.02(B). See *State v. Day*, Cuyahoga App. No. 83138, 2004-Ohio-1449, 2004 WL 583880, citing *State v. Jones*, Cuyahoga App. No. 80737, 2002-Ohio-6045, 2002 WL 31478933. Since Wilson did not request any specific instructions on lesser included offenses, we will review his argument that the trial court erred in failing to sua sponte instruct the jury on reckless homicide only for plain error.

{¶ 41} As far as the effectiveness of his counsel regarding counsel's failure to request the instruction, reversal of a conviction or sentence based upon ineffective assistance of counsel requires satisfaction of the two-pronged test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *Strickland* requires that the defendant show, first, that counsel's performance was deficient and second, that counsel's deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Id. at 687–696, 104 S.Ct. 2052, 80 L.Ed.2d 674. In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Id.; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

{¶ 42} Generally, a failure to request a jury instruction on a lesser included offense is presumed to be a matter of trial strategy and, therefore, does not establish ineffective assistance of counsel. See *State v. Griffie* (1996), 74 Ohio St.3d 332, 333, 658 N.E.2d 764.

{¶ 43} In this case, the transcript reveals that defense counsel considered requesting jury instructions on lesser included offenses, repeatedly asked for additional time to confer with his client, and only after he spoke with Wilson during a special recess in trial did counsel make the decision not to request any jury instructions based on lesser included offenses. Based on the evidence presented at trial, we do not find plain error in the trial court's acceptance of defense counsel's trial strategy, nor do we find that defense counsel was ineffective.

{¶ 44} Therefore, the fifth and seventh assignments of error are overruled.

## Felonious Assault

{¶ 45} In the sixth assignment of error, Wilson argues that the trial court erred when it failed to merge the two counts of felonious assault. Wilson urges reversal on one of the counts of felonious assault based on *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149. In *Brown*, the Ohio Supreme Court held that aggravated assault under R.C. 2903.12(A)(1) and (A)(2) constituted allied offenses of similar import when the offenses result from a single act undertaken with a single animus.[1] The court noted that the subsections "set forth two means of committing the offense—causing serious physical harm to another, or causing or attempting to cause physical harm by means of a deadly weapon or dangerous ordnance" and that each subsection provided different forms of the same offense, "in each of which the legislature manifested its intent to serve the same interest—preventing physical harm to persons." Id. at ¶ 39.

{¶ 46} The court has extended the holding in *Brown* to apply to felonious assault under R.C. 2903.11(A)(1) and (A)(2). See *State v. Cotton*, 120 Ohio St.3d 321, 2008-Ohio-6249, 898 N.E.2d 959. We have held that felonious assault charges pursuant to R.C. 2903.11(A)(1) and 2903.11(A)(2) are allied offenses of similar import if the state is unable to show that there was separate animus for each count of felonious assault. *State v. Sellers*, Cuyahoga App. No. 91043, 2009-Ohio-485, 2009 WL 279738, *State v. Goldsmith*, Cuyahoga App. No. 90617, 2008-Ohio-5990, 2008 WL 4949853.

{¶ 47} In this case, Wilson was convicted of two counts of felonious assault, in violation of R.C. 2903.11(A)(1) and (2), which provide:

{¶ 48} "(A) No person shall knowingly do either of the following:

{¶ 49} "(1) Cause serious physical harm to another or to another's unborn;

---

1. The term "animus" refers to a person's "purpose or, more properly, immediate motive." *State v. Logan* (1979), 60 Ohio St.2d 126, 131, 14 O.O.3d 373, 397 N.E.2d 1345.

{¶ 50} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶ 51} Wilson argued at sentencing that his felonious-assault convictions should merge because he shot only Yhonquea. The trial court denied the request, finding that there was a separate animus for each of the nine shots fired because each shot could have hit a different victim. The state proposed the same argument at oral argument before this court.

{¶ 52} We would agree with the state's contention if the counts for felonious assault had listed other victims, but Yhonquea was the only victim listed on the felonious-assault charges, and the evidence produced at trial established a single animus for the felonious assault of a single victim. The testimony showed that Wilson chased Yhonquea down East 59th Street, repeatedly shooting at him, before he finally caught up to Yhonquea and shot him in the back. His actions amounted to one continuous assault against Yhonquea. Under the facts of this case, Wilson cannot be convicted of two counts of felonious assault under both subsections (A)(1) and (A)(2) for the same conduct against the same victim. See *State v. Lanier*, 180 Ohio App.3d 376, 2008-Ohio-6906, 905 N.E.2d 687.

{¶ 53} Therefore, the sixth assignment of error is sustained.

{¶ 54} The judgment is affirmed in part and reversed in part, and the cause is remanded for the state to elect which of Wilson's felonious assault charges will merge into the other for purposes of his conviction and sentence, and correction of the conviction entry accordingly. See *Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 43.

Judgment accordingly.

KILBANE, P.J., and DYKE, J., concur.