[Cite as *State v. Smith* , 2010-Ohio-5953.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 09CA3321 |
| | : | |
| vs. | : | **Revised: November 22, 2010** |
| | : | |
| REXFORD A. SMITH, | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Gene Meadows, Portsmouth, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, Portsmouth, Ohio, for Appellee.

_____

McFarland, P.J.:

**{¶1}** Appellant, Rexford Smith, appeals his conviction by the Scioto County Court of Common Pleas after a jury found him guilty of one count of murder, a special felony in violation of R.C. 2903.02(B), and felonious assault, in violation of R.C. 2929.13(D), a felony of the second degree. On appeal, Appellant contends that the trial court erred to his prejudice by 1) violating his due process rights to a fair trial by allowing the State of Ohio to amend the indictment the day of trial; and 2) by failing to instruct the jury on the lesser-included offense of involuntary manslaughter.

{¶2} In our view, changing the date of the offense did not impermissibly change the name or identity of the crime, and because Appellant did not rely on an alibi as part of his defense, we cannot conclude that the trial court erred or abused its discretion in allowing the indictment to be amended the day of trial.  As such, Appellant's first assignment of error is overruled.  Further, because the evidence presented at trial did not support the inclusion of an instruction on involuntary manslaughter, we cannot conclude that the trial court erred or abused its discretion in failing to give that instruction to the jury.  Thus, Appellant's second assignment of error is overruled.  Accordingly, Appellant's convictions for murder and felonious assault are affirmed.

FACTS

{¶3} On the evening of June 6, 2009, Appellant, Rexford Smith, and Mark Wells, were socializing and drinking alcohol with friends in Tracy Park, located in Portsmouth, Ohio.  Later that evening, shortly before midnight, emergency workers and police responded to a call regarding a fight between two men near Kroger in Portsmouth, Ohio, located right across the street from Tracy Park.  Upon arrival, Mark Wells was found lying in the road with blood pooled under his head and was unresponsive.  Appellant, who matched the description given by witnesses to the fight, was

subsequently found a few blocks away and was arrested. Wells was transported to Southern Ohio Medical Center and then transferred to another hospital, where he died on June 9, 2009.

{¶4} On July 24, 2009, Appellant was indicted on one count of murder, a special felony in violation of R.C. 2903.02(B), and one count of felonious assault, in violation of R.C. 2903.11(A)(1)/(D)(1), a felony of the second degree. The indictment provided that the crimes occurred "on or about the 7th day of June, 2009[.]" A subsequently filed bill of particulars also provided that the charged crimes occurred on or about June 7th. The matter proceeded to a jury trial which began on August 31, 2009.

{¶5} On the morning of trial, the State moved to amend the indictment to change the stated date of the offenses to "on or about the 6th day of June, 2009." The State simultaneously filed an amended bill of particulars changing the date as well. Appellant objected to the amendment but did not request a continuance or argue that it would impair an alibi defense. The trial court allowed the amendment and the matter proceeded to trial.

{¶6} At trial, the State presented several witnesses. Sergeant Michael Hamilton testified that he arrived at the scene to find the victim, Mark Wells, lying in the road, unresponsive, with blood beginning to pool under his head. Captain Robert Ware testified that when he responded to the scene he began

looking for the assailant, described as a white male with no shirt and a white hat. He testified that he found Appellant, who matched the description, staggering on Findlay Street, a few blocks from Tracy Park. He testified that Appellant denied being in a fight with Wells but stated that Wells had hit him. He further testified that he accompanied Appellant back to the police station for booking, stating that Appellant was wearing an off-white or tan colored hat, denim pants, and work boots with a hard sole.

{¶7} Jack Woodson, friend of both Appellant and the victim, testified that he had intervened in an argument between Appellant and Wells early in the evening on June 6, 2009, and that Appellant made a comment about his new steel toed boots and wondered what the steel toed boots would do to a human head. Amanda Hill, an unrelated witness who happened to be at Kroger that evening, testified that she saw two men shoving each other, one man with long hair, and the other man wearing a white hat. She testified that the long haired man was thrown to the ground and as he was trying to get up, the man in the white hat "stepped back and kicked his head like a football." The State also presented Robin Holsinger, a friend of both Appellant and the victim and who had dated the victim on and off. Holsinger testified that after one of the arguments between Appellant and the victim in the park on the evening in question, Appellant stated that he wondered what a pair of

steel toed boots would do to a man's head. Holsinger further testified that she heard a woman scream and ran towards Kroger to find Wells unresponsive and Appellant running away, towards a local bar.

{¶8} Dr. Susan Allen, a forensic pathologist who performed an autopsy on the victim also testified on behalf of the State. Dr. Allen testified that the victim died of blunt force trauma to the head causing a subdural hematoma, which resulted in herniation of the brain. Kristen Slaper, a forensic scientist from BCI&I also testified. She testified that blood samples taken from Appellant's boot and clothing belonged to Mark Wells.

{¶9} Appellant's theory at trial was that while he admittedly was in a fight with Wells on the night of June 6, 2009, the cause of the victim's death was attributed to injuries sustained in a fight with another person, prior to the fight with Appellant on June 6, 2009. In support of his theory, Appellant presented three witnesses, each of whom testified that they observed Wells with scratches on his face and blackened eye, early on the evening of June 6th, before the fight with Appellant occurred.

{¶10} At trial, Appellant requested a jury instruction on involuntary manslaughter, arguing that the evidence presented indicated that Appellant punched and kicked the victim, which Appellant argued only established an

assault, rather than felonious assault.  The State objected and the trial court

refused to give the instruction, reasoning as follows:

"Well here's what kind of stuck out in my mind so far.  There were at least
two witnesses that he testified that he contemplated doing that even early,
kicking a man in the head with a steel toed boot.  Two different witnesses
testified to that.  And through the testimony by the young lady who has
nothing to gain in this whatsoever, she just happened to be here at the right
time, that he kicked his head like a football, stepping backwards and taking a
step into him and kicking him.  I think that's the intent, to cause serious
physical harm.  So I am not going to give an instruction on involuntary
manslaughter.  All right?"

{¶11} Subsequently, Appellant was convicted of both murder and

felonious assault and was sentenced by the trial court.  It is from the trial

court's September 11, 2009, judgment entry that Appellant now brings his

timely appeal, assigning the following assignments of error for our review.

## ASSIGNMENTS OF ERROR

"I.  THE TRIAL COURT ERRED TO THE PREJUDICE OF THE
DEFENDANT BY VIOLATING THE DEFENDANT-
APPELLANT'S DUE PROCESS RIGHTS TO A FAIR TRIAL BY
ALLOWING THE STATE OF OHIO TO AMEND THE
INDICTMENT THE DAY OF TRIAL.

II.  THE TRIAL COURT ERRED TO THE PREJUDICE OF THE
DEFENDANT-APPELLANT BY FAILING TO INSTRUCT THE
JURY ON THE LESSER-INCLUDED OFFENSE OF
INVOLUNTARY MANSLAUGHTER."

## ASSIGNMENT OF ERROR I

{¶12} In his first assignment of error, Appellant contends that the trial

court erred to his prejudice and violated his rights to due process and a fair

trial when it allowed the State to amend the indictment on the day of trial. In response, the State contends that it simply amended the date of the offense, which did not change the name or identity of the crimes charged and which did not mislead or prejudice Appellant. Based upon the following reasoning, we agree with the argument advanced by the State.

{¶13} Section 10, Article I of the Ohio Constitution states: "[N]o person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury." This constitutional provision "guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury. Where one of the vital elements identifying the crime is omitted from the indictment, it is defective and cannot be cured by the court as such a procedure would permit the court to convict the accused on a charge essentially different from that found by the grand jury." *State v. Evans*, Scioto App. No. 08CA3268, 2010-Ohio-2554 at ¶ 32; citing, *State v. Headley* (1983), 6 Ohio St.3d 475, 478-79, 453 N.E.2d 716. This rule ensures that a criminal defendant will not be "surprised" by a charge. See *In re Reed*, 147 Ohio App.3d 182, 2002-Ohio-43, 769 N.E.2d 412, at ¶ 33.

{¶14} By specifying when a court may permit an amendment to an indictment, Crim.R. 7(D) supplements the constitutional right to presentment

and indictment by a grand jury. *Evans* at ¶33; citing *State v. Strozier* (Oct. 5, 1994), Montgomery App. No. 14021, 1994 WL 567470. The rule states:

The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury. Where a jury is discharged under this division, jeopardy shall not attach to the offense charged in the amended indictment, information, or complaint. No action of the court in refusing a continuance or postponement under this division is reviewable except after motion to grant a new trial therefore is refused by the trial court, and no appeal based upon such action of the court shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted.

As such, while the rule permits most amendments, it prohibits amendments that change the name or identity of the crime charged. *Evans* at ¶ 33; see also *State v. Kittle*, Athens App. No. 04CA41, 2005-Ohio-3198 , at ¶ 12.

{¶15} Thus, Crim.R. 7(D) permits a trial court, before, during or after a trial, to allow the State to amend an indictment, provided no change is made in the name or identity of the crime charged. Crim.R. 7(D). A trial court's decision to allow an amendment that changes the name or identity of the offense charged constitutes reversible error regardless of whether the

accused can demonstrate prejudice. *Evans* at ¶ 33; citing *Kittle* at ¶ 12.

Whether an amendment changes the name or identity of the crime charged is

a question of law. Id.

{¶16} If an amendment does not change the name or identity of the

crime charged, we review the trial court's decision under an abuse of

discretion standard. *Evans* at ¶ 34; citing *State v. Beach*, 148 Ohio App.3d

181, 2002-Ohio-2759, 772 N.E.2d 677, at ¶ 23. Once again, the term abuse

of discretion connotes more than an error of law or judgment; rather, it

implies that the court's attitude is unreasonable, arbitrary, or unconscionable.

See, e.g., *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.

When the court permits an amendment that does not change the name or

identity of the offense charged, the accused is entitled, upon motion, to a

discharge of the jury or to a continuance, "unless it clearly appears from the

whole proceedings that the defendant has not been misled or prejudiced by

the defect or variance in respect to which the amendment is made." Crim.R.

7(D). When a trial court refuses to continue or postpone the matter, the

appellate court may not reverse the trial court's action unless "a failure of

justice resulted."

{¶17} In the case at hand, the amendment to the indictment which

changed the date from "on or about the 7th day of June, 2009" to "on or

about the 6th day of June, 2009" did not change the name or identity of the offense. This court has previously held that amendments that change "only the date on which the offense occurred * * * [do] not charge a new or different offense, nor * * * change the substance of the offense." *Evans* at ¶35; citing *State v. Quivey*, Meigs App. No. 04CA8, 2005-Ohio-5540, at ¶ 28. We therefore review the trial court's decision to allow the amendment under an abuse of discretion standard. *Evans*, supra, at ¶ 35.

{¶18} In the case sub judice, we cannot conclude that the trial court abused its discretion when it allowed the State to amend the date alleged in the indictment. As in *Evans*, supra, the amendment did not alter any of the essential elements of the crimes, and did not add any additional criminal acts. At all times Appellant remained charged with the same crimes resulting in the victim, Mark Wells' death. The amendment simply corrected the date from June 7th to June 6th, 2009. Further, Appellant has not demonstrated that he suffered any specific prejudice as a result of the amendment. Importantly, we note that Appellant had not filed a notice of alibi and did not present an alibi defense at trial. Instead, Appellant admitted to fighting with the victim, but based his defense on causation, suggesting Appellant had been in an earlier fight with another person that caused injuries resulting in the victim's eventual death.

{¶19} Much like the argument set forth in *Evans*, supra, Appellant relies on *State v. Vitale* (1994), 96 Ohio App.3d 695, 645 N.E.2d 1277. As in *Evans*, we find that reasoning to be misplaced. In *Vitale*, the trial court permitted the State to amend the indictment charging a theft offense from a specific date of June 14, 1991, to a time period ranging from June 14, 1991, to June 21, 1991. The defendant was ultimately acquitted of the offense charged in relation to his conduct on June 14th but was convicted of a June 21, 1991, theft offense, based upon a different set of facts than those alleged to have occurred on June 14, 1991.

{¶20} Here, however, the State relied upon the same set of facts for both the June 7th and June 6th, 2009 dates. Both the original indictment and the amended indictment alleged that Appellant's actions resulted in serious physical harm and death to the victim. The amended indictment did not change the nature or identity of the crime charged by changing the date within which the alleged crime occurred. Thus, as in *Evans*, we find *Vitale* inapplicable.

{¶21} Further, the record reflects that although Appellant objected to the amendment of the indictment, he did not request a continuance when the State requested to amend the indictment or when the court granted the request to allow the amendment. As such, Appellant failed to request the

remedy that was available to him when the court permitted an amendment that did not change the name or identity of the crime charged. See Crim.R. 7(D); *Columbus v. Bishop*, Franklin App. No. 08AP-300, 2008-Ohio-6964; see, also *Evans* at ¶ 38. Thus, based upon the foregoing reasoning, we overrule Appellant's first assignment of error.

## ASSIGNMENT OF ERROR II

{¶22} In his second assignment of error, Appellant contends that the trial court erred to his prejudice when it failed to instruct the jury on the lesser-included offense of involuntary manslaughter. In response, the State acknowledges that involuntary manslaughter is a lesser-included offense of murder, but argues that such an instruction is only proper when the evidence presented at trial would support an acquittal on the charged crime and conviction upon the lesser included offense. The State further argues that the evidence presented at trial would not have supported acquittal on the felony murder charge and, as a result, Appellant was not entitled to such an instruction. Based upon the following reasoning, we agree with State's argument.

{¶23} In reviewing a trial court's decision regarding whether to give a jury instruction on a lesser-included offense, we employ a two-tiered analysis. *State v. Wright*, Scioto App. No. 01CA2781, 2002-Ohio-1462, at

¶22. First, we must determine whether the offense for which the instruction is requested is a lesser-included offense of the charged offense. To do so, we must assess whether "(i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." Id.; citing *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus. It has already been established, as noted by the Supreme Court of Ohio in *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d. 286, that involuntary manslaughter is a lesser included offense of murder.

{¶24} Once it is determined that a charge constitutes a lesser-included offense of another charged offense, we then examine whether the record contains evidentiary support upon which a jury could reasonably acquit the defendant of the greater offense and convict him on the lesser offense. The trial court has discretion in determining whether the record contains sufficient evidentiary support to warrant a jury instruction on the lesser-included offense, and we will not reverse that determination absent an abuse of discretion. *State v. Wright* at ¶23; citing *State v. Endicott* (1994), 99 Ohio

App.3d 688, 693, 651 N.E.2d 1024; *U.S. v. Ursary* (1997), 109 F.3d 1129; see, also, *State v. Davis* (1992), 81 Ohio App.3d 706, 714, 612 N.E.2d 343.

{¶25} As set forth above, the State does not dispute that involuntary manslaughter is a lesser-included offense of murder.  Instead the State contends that the evidence presented at trial did not support giving an instruction on involuntary manslaughter. A trial court is required to instruct the jury on a lesser-included offense "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *Thomas* at paragraph two of the syllabus. The evidence advanced by the defense must be sufficient to allow the jury to reasonably reject the greater offense; a lesser-included offense instruction is not warranted every time some evidence is presented on the lesser offense. *State v. Shane* (1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272. The court must view the evidence in the light most favorable to the defendant when deciding whether to give a lesser-included offense instruction. *State v. Campbell* (1994), 69 Ohio St.3d 38, 48, 1994-Ohio-492, 630 N.E.2d 339.

{¶26} In the case sub judice, Appellant was convicted of murder under R.C. 2903.02(B), the felony murder statute, which states: "No person shall cause the death of another as a proximate result of the offender's

committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 [the voluntary manslaughter statute] or section 2903.04 [the involuntary manslaughter statute]." The Supreme Court of Ohio has held that the culpable mental state required to support a conviction under R.C. 2903.02(B) is the same one necessary to support a conviction for the underlying felony offense of violence. *State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498 at ¶ 31-34.  In this case, the underlying felony offense of violence was felonious assault.

{¶27} R.C. 2903.11(A)(1) governs felonious assault and states that "no person shall knowingly * * * cause serious physical harm to another * * *." It is punishable as a first or second-degree felony under R.C. 2903.11(D), depending on the circumstances.  Further, R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." (Emphasis added.)

{¶28} At trial, Appellant requested that the jury be provided with an instruction on involuntary manslaughter based upon evidence presented via testimony of witness Amanda Hill, indicating that the altercation between

Appellant and the victim involved a punch and a kick. Appellant argued that such conduct simply amounted to assault, not felonious assault, and as such supported an instruction on involuntary manslaughter. Involuntary manslaughter is defined in R.C. 2903.04 and states in section (A) that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." As with murder, the culpable mental state for involuntary manslaughter is supplied by the underlying offense. *State v. Wilson* (Ohio App. 8 Dist., 04-09-2009) 182 Ohio App.3d 171, 2009-Ohio-1681, 912 N.E.2d 133. The alternative underlying offense offered by Appellant was assault, governed by R.C. 2903.13, which states as follows:

"(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.

(B) No person shall recklessly cause serious physical harm to another or to another's unborn."

{¶29} Here, a review of the record reveals Appellant scuffled with the victim a few times in the early evening of June 6, 2009, while in Tracy Park with friends. Two different witnesses testified to hearing Appellant make statements that evening about wearing steel toed boots and wondering what the boots would do to a person's head. Witness testimony established that Appellant and the victim left the park and headed towards Kroger.

Appellant doesn't deny that he and the victim left the park together and ended up in a physical fight that evening. A completely unrelated witness who happened to be at Kroger that evening testified that she saw Appellant and the victim fighting, saw the victim on the ground and testified that Appellant "stepped back and kicked [the victim's] head like a football.

{¶30} Further, evidence in the form of a recorded phone call placed by Appellant while in jail indicated that Appellant believed he had sustained a broken hand and broken foot during the fight with the victim. Additional evidence introduced regarding the DNA testing performed on Appellant's boot established that the blood on the boot belonged to the victim. Finally, the evidence presented at trial established that the victim was unconscious at the time that paramedics arrived on the scene, and that he never regained consciousness before his death on June 9, 2009.

{¶31} After thoroughly reviewing the record before us, we cannot conclude, even in a light most favorable to Appellant, that the jury could have reasonably found that Appellant did not act knowingly when he kicked his victim in the head while wearing steel toed boots. Because there was no evidence in the record tending to show any mens rea other than knowingly, the jury could not have acquitted Appellant of the greater offense, while

convicting him of the lesser offense. Thus, an instruction on the lesser-included of involuntary manslaughter was unnecessary.

{¶32} Additionally, the injuries sustained by the victim were clearly serious physical injuries which resulted in his death. It is axiomatic that "a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." *State v. Johnson* (1978), 56 Ohio St.2d 35, 39, 381 N.E.2d 637. Having concluded that Appellant acted knowingly and caused serious physical harm to the victim that eventually resulted in death, we hold the trial court did abuse its discretion in refusing to instruct the jury on the lesser-included offense of involuntary manslaughter.

{¶33} As such, Appellant's second assignment of error is overruled. Accordingly, the decision and judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, J. and Kline, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
    Matthew W. McFarland
    Presiding Judge

### **NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**