[Cite as *State v. Mansfield*, 2016-Ohio-8189.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2015-CA-72 |
| | : | |
| v. | : | Trial Court Case No. 2014-CR-739 |
| | : | |
| ERIN MANSFIELD | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of December, 2016.

. . . . . . . . . . .

MEGAN M. FARLEY, Atty. Reg. No. 0088515, Clark County Prosecutor's Office, 50 East Columbia Street, 4th Floor, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

DAVID R. MILES, Atty. Reg. No. 0013841, 125 West Main Street, Suite 201, Fairborn, Ohio 45324
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

        **{¶ 1}** Erin Mansfield appeals from her convictions for involuntary manslaughter and voluntary manslaughter. We conclude that the trial court abused its discretion by

summarily overruling Mansfield's motion claiming indigency and asking for public funds to pay an expert witness to assist with her defense. Therefore we reverse the judgment and vacate the convictions and sentence. The matter will be remanded for a new trial.

## I. Background

{¶ 2} Todd Griffith lived at a campground in Clark County, Ohio. On July 4, 2014, Mansfield and her boyfriend Charles "Tony" Rogers arrived at the campground to visit another campground resident, Geneva Zerkle. All four of them had been drinking that day and were hanging around together when an argument broke out between Griffith and Zerkle, after Griffith accidentally broke one of Zerkle's lawn chairs. Mansfield joined the argument in defense of Zerkle. There was name calling, profanity, and some pushing by all involved. Everyone eventually calmed down and Griffith left. Later, Rogers found Griffith and asked him to apologize to Mansfield for calling her a "b****." Mansfield and Griffith begin arguing again, and Griffith pushed her into a kiddie pool, partly filled with water, soaking her. Rogers tackled Griffith onto the ground, and Mansfield got on top of him. She sat on Griffith's chest and began to choke him. Zerkle watched as Griffith started to turn blue. She told Mansfield that something was wrong and that she should stop choking him, but Mansfield replied that Griffith was just faking it. Zerkle told Mansfield several times that something was wrong before Mansfield climbed off Griffith. Everyone immediately realized that something was wrong with Griffith, but by then it was too late. Attempts to revive him failed, and he was pronounced dead at the scene. The coroner who autopsied Griffith's body determined that he died of asphyxia due to choking and chest compression, that is, his brain was starved of oxygen because blood was prevented from reaching it due to the occlusion of an artery or vein.

{¶ 3} Mansfield was indicted in November 2014 on three counts of involuntary manslaughter and one count of voluntary manslaughter. The involuntary manslaughter charges were predicated on aggravated assault, assault (knowingly causing physical harm), and assault (recklessly causing serious physical harm). A jury found Mansfield guilty on all counts. The offenses merged for sentencing, and the State elected sentencing on the charge of involuntary manslaughter predicated on aggravated assault. The trial court sentenced Mansfield to 11 years in prison.

## II. Analysis

{¶ 4} Mansfield presents seven assignments of error. We begin with the first.

### A. *The motion for payment of expert-witness fees*

{¶ 5} Before trial, Mansfield filed a motion asking the trial court to order the State to pay the fees of an expert witness to assist with her defense. Mansfield claims in the motion that she is indigent and says that though she has retained private counsel she did so with borrowed money. Mansfield attached to her motion an affidavit of indigency in which she avers that she has no resources to pay an expert witness because she is unemployed, has no bank accounts, owns no motor vehicles, has no interest in any real property, and has no financial accounts of any type. The trial court held no hearing but instead summarily overruled the motion, saying only, "Defendant has retained counsel and she is responsible for any fees associated for her defense." Feb. 19, 2015 *Entry*.

{¶ 6} The first assignment of error alleges that the trial court erred by overruling Mansfield's motion for payment of expert-witness fees. Mansfield contends that retaining private counsel is not, by itself, sufficient reason to deny public funding for expert

assistance.

{¶ 7} An indigent criminal defendant has a due-process right to expert assistance under some circumstances. *Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985). *See also State v. Mason*, 82 Ohio St.3d 144, 694 N.E.2d 932 (1998), syllabus (establishing when an indigent defendant must be provided funds to obtain expert assistance at state expense). Few Ohio courts have addressed the issue of whether a defendant who has retained private counsel may be declared indigent for purposes of retaining an expert. The Eleventh District has addressed the issue most directly and most often. In *State v. Pasqualone*, 11th Dist. Ashtabula No. 97-A-0034, 1999 WL 262174 (Mar. 31, 1999), the defendant filed a motion for the appointment of experts at state expense to assist him in reconstructing the events of an automobile collision. Overruling the motion, without a hearing, the trial court found that the defendant was not indigent, solely on the grounds that the defendant had retained private counsel. But the appellate court said that the fact that a defendant has retained private counsel does not preclude her from being declared indigent. *Pasqualone* at *4. "It is entirely conceivable," said the court, "that a defendant may be indigent for one purpose, but not for another. For example, a defendant's resources may be drained by the expenditure of obtaining private counsel. Thus, while a defendant can afford private counsel, he or she may not be able to afford other costs of the case such as an investigator or expert witnesses." *Id.* Nevertheless, the appellate court affirmed the defendant's conviction because the defendant failed to provide the trial court with any evidence to support his claim of indigency.

{¶ 8} The Eleventh District next addressed the issue in *State v. Sweitzer*, 11th Dist.

Trumbull No. 98-T-0203, 2000 WL 973416 (July 14, 2000). In that case, the defendant was initially represented by a public defender, but later friends of the defendant's family hired a private attorney for him. The defendant claimed that he was still indigent and asked the trial court to appoint a medical expert and an investigator. After an indigency hearing, the trial court denied the request because the defendant was represented by private counsel. The appellate court began by noting that one's indigency status can change over time, quoting the second paragraph of the syllabus in *State v. Tymcio*, 42 Ohio St.2d 39, 325 N.E.2d 556 (1975): "A preliminary determination of indigency does not foreclose a redetermination of eligibility for assigned counsel when, at a subsequent stage of a criminal proceeding, new information concerning the ability or inability of the accused to obtain counsel becomes available." The appellate court then noted its holding in *Pasqualone* that "the fact that a defendant has private counsel does not preclude him or her from being declared indigent." *Sweitzer* at *7. The court concluded that "the trial court erred in denying appellant's motions solely on the basis that he was represented by private counsel" and reversed. *Id.* The court distinguished *Pasqualone* on the grounds that the defendant in that case presented no evidence to support his indigency claim but that the *Sweitzer* defendant was given a hearing and presented evidence to support his claim.

{¶ 9} Most recently, the Eleventh District addressed the issue in *State v. Kidd*, 11th Dist. Portage No. 2006-P-0087, 2007-Ohio-6562. The defendant in *Kidd* filed a motion for funds for investigative expenses, along with an affidavit of indigency. The trial court held an indigency hearing. The court overruled the motion because it found that the defendant was capable of employment and therefore not indigent. On appeal, the defendant argued

that the trial court's conclusion that he was not indigent was based on the fact that his mother had retained private counsel for him. Citing *Pasqualone* and *Sweitzer*, the appellate court agreed that securing private counsel does not preclude a finding of indigency for other purposes and that one's indigency status can change over time. But the court found no abuse of discretion in the trial court's indigency finding, because the defendant had failed to establish that he was indigent.

{¶ 10} The Eleventh District's resolution of this issue agrees with the standards used by the Ohio Public Defender Commission (which provides legal representation at state expense to indigent persons) to determine if a person is indigent. One of the standards explicitly states that a defendant who has retained private counsel may still be declared indigent for purposes of expert assistance: "A defendant who retains counsel but does not have sufficient funds to pay for experts, transcripts, and other related expenses should be declared indigent for those purposes." Ohio Adm.Code 120-1-03(E)(3).

{¶ 11} We agree with the Eleventh District that a person cannot be found not indigent for purposes of obtaining expert assistance based solely on the fact that the person is represented by private counsel, although representation by retained counsel is an important factor in evaluating indigency when a request for expert assistance is made.[1] Here, the trial court's indigency finding is based solely on the fact that Mansfield was represented by private counsel. Moreover, the court's finding is not supported by the record. Mansfield's affidavit of indigence is the only evidence on the issue, and it suggests

---

[1] Retention of private counsel ordinarily should provide for the payment of fees and reasonably anticipated defense resources. An unforeseen change in circumstances may require additional defense resources.

that she has no money to pay the expert. *Compare State v. Caulley*, 132 Ohio App.3d 706, 725 N.E.2d 1229 (10th Dist.1999) (concluding that the trial court's determination that the defendant was not indigent and therefore not eligible to receive court-appointed appellate counsel was not supported by the record, because uncontroverted testimony clearly established that the defendant could not obtain appellate counsel).

{¶ 12} The trial court could have held a hearing to inquire fully into Mansfield's indigency claim or the claimed need for expert assistance. The indigency determination required to exercise the right to the assistance of counsel is interrelated with the indigency determination required to exercise the right to expert assistance. Concerning that determination as to counsel, the Ohio Supreme Court has pointed out that "[m]any factors may impinge upon a defendant's inability to obtain counsel, factors which may differ greatly from case to case." *Tymcio*, 42 Ohio St.2d at 44, 325 N.E.2d 556. The same may be said of the inability to obtain expert assistance. What also may be said of the inability to obtain expert assistance is this: "It is the duty of the trial court in a criminal case to inquire fully into the circumstances impinging upon an accused's claimed inability to obtain counsel and his consequent need for assistance in employing counsel, or for the assistance of court-appointed counsel." *Id.* at paragraph three of the syllabus. This duty could have been satisfied by holding an indigency hearing.

{¶ 13} The trial court erred in finding that Mansfield was not indigent.

{¶ 14} The first assignment of error is sustained.

{¶ 15} The errors alleged in the other assignments of error occurred after the erroneous handling of the motion for payment of the expert witness. The second and third assignments of error respectively challenge the sufficiency of the evidence and the

manifest weight of the evidence. The fourth assignment of error alleges prosecutorial misconduct with respect to the evidence. The fifth assignment of error asserts a claim of ineffective assistance of counsel. The sixth assignment alleges cumulative error. And the seventh assignment of error challenges Mansfield's sentence. Each of these assignments of error is moot—except for the second. "[R]etrial is barred if the reversal was based upon a finding that the evidence was legally insufficient to support the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *Tibbs v. Florida*, 457 U.S. 31, 47, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Therefore we must review the second assignment of error.

## B. The *sufficiency of the evidence*

{¶ 16} Mansfield argues in the second assignment of error that the evidence is insufficient to find her guilty of any of the charged offenses. A sufficiency-of-the-evidence challenge requires that we consider "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "We will not 'disturb a verdict on appeal on sufficiency grounds unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." ' " *State v. Montgomery*, Ohio Sup. Ct. Slip Opinion No. 2016-Ohio-5487, ¶ 74, quoting *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, quoting *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997).

{¶ 17} The jury found Mansfield guilty of all of the charged offenses: involuntary manslaughter under R.C. 2903.04(A), for causing Griffith's death "as a proximate result

of" committing aggravated assault (Count One); involuntary manslaughter under R.C. 2903.04(B), for causing the death "as a proximate result of" committing assault by knowingly causing physical harm (Count Two); involuntary manslaughter under R.C. 2903.04(B), for causing the death "as a proximate result of" committing assault by recklessly causing serious physical harm (Count Three); and voluntary manslaughter under R.C. 2903.03(A), for actually causing Griffith's death (Count Four). Mansfield argues that the evidence is insufficient to find that she acted knowingly (Counts One, Two, and Four) or recklessly (Count Three). And she argues that the evidence is insufficient to find that she proximately caused (Counts One, Two, and Three) or actually caused (Count Four) Griffith's death.

{¶ 18} The culpable mental state of the offenses charged in Counts One, Two, and Four is knowingly. "The culpable mental state of involuntary manslaughter is supplied by the underlying offense * * *." *State v. Wilson*, 182 Ohio App.3d 171, 2009-Ohio-1681, 912 N.E.2d 133, ¶ 36 (8th Dist.). *Accord State v. Campbell*, 74 Ohio App.3d 352, 358-359, 598 N.E.2d 1244 (1st Dist.1991). The underlying offense in Count One is aggravated assault under R.C. 2903.12(A)(1), which is committed by "knowingly" "[c]aus[ing] serious physical harm to another." And the underlying offense in Count Two is assault under R.C. 2903.13(A), which is committed by "knowingly caus[ing] or attempt[ing] to cause physical harm to another." As for voluntary manslaughter in Count Four, a person commits this offense by "knowingly caus[ing] the death of another." R.C. 2903.03(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). The culpable mental state of the assault offense underlying Count Three is

recklessly: "No person shall recklessly cause serious physical harm to another * * *." R.C. 2903.13(B). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. * * *" R.C. 2901.22(C).

{¶ 19} Here, several witnesses testified at trial about what they heard Mansfield say during the incident. One witness testified that after Griffith pushed Mansfield into the pool, he heard Mansfield say that "she was going to choke him out." (Trial Tr. 231). A couple of minutes later the witness heard Mansfield say, "have you had enough, have you had enough yet." (*Id.* at 232). Zerkle testified that while Mansfield was on top of Griffith, Mansfield asked him, "you want to breathe [m***** f*****]?" and "you want to live [m***** f*****], you want to live?" (*Id.* at 516-517). Another witness testified that she saw Griffith struggling to get up and heard Mansfield yell, "choke him out." (*Id.* at 279). Yet another witness testified that after Griffith pushed Mansfield into the pool, she heard Mansfield say, "you pushed me in the pool * * * I'll kill you, you [m***** f*****]." (*Id.* at 637). The witness testified that she heard Mansfield say later, "choke him out" and then heard Mansfield ask Griffith, "have you had enough?" (*Id.* at 637-638). When Griffith did not respond, testified the witness, Mansfield said, "all right, choke him some more." (*Id.* at 638). Still another witness testified that afterwards, in response to someone's question about what happened, he heard Mansfield say, "I choked him out." (*Id.* at 339).

{¶ 20} Based on this evidence, a reasonable person could find, beyond a reasonable doubt, that Mansfield not only disregarded the risk that choking Griffith was likely to cause him serious physical harm but that she was aware that her conduct would

probably cause him serious physical harm. Indeed, she was plainly trying to do just that. In addition, a reasonable person could find, again, beyond a reasonable doubt, that Mansfield was aware that choking Griffith would probably cause his death. It would be reasonable to find that Mansfield, in the heat of the moment, was in fact trying to kill him.

**{¶ 21}** As for the causation elements, the evidence must show that Mansfield proximately caused Griffith's death as a result of committing the assault offenses (Counts One, Two, and Three) and actually caused his death (Count Four). With respect to proximate cause, a defendant "will be held responsible for consequences that are direct, normal, and reasonably inevitable when viewed in the light of ordinary experience." *State v. Webber*, 2015-Ohio-2183, 35 N.E.3d 961, ¶ 11 (2d Dist.). "It is not necessary that the defendant 'be in a position to foresee the precise consequence of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct.' " *Id.*, quoting *State v. Wilson*, 182 Ohio App.3d 171, 2009-Ohio-1681, 912 N.E.2d 133, ¶ 26 (8th Dist.).

**{¶ 22}** The coroner who autopsied Griffith's body testified that he died of asphyxia due to choking and chest compression. The coroner testified that he saw physical evidence of hemorrhage in Griffith's neck area suggesting that force was applied in that area. He explained that increasing pressure on the neck can slow the flow of blood from the head back to the heart. This increases the pressure in the carotid arteries and the brain begins to starve for oxygen, which is a critical problem because the brain needs a constant supply of oxygen. Chest compression was a contributing factor in this case, said the coroner, because the pressure on the chest combined with force applied to the neck prevented Griffith from being able to breathe in enough oxygen. Thus the effect of

Mansfield choking Griffith was to stop the blood from flowing to Griffith's brain.

{¶ 23} A reasonable person could find, beyond a reasonable doubt, that Mansfield's actions—sitting on his chest and squeezing his neck—both proximately and actually caused Griffith's death. The coroner's testimony supports the finding that death was a natural and logical consequence of Mansfield's actions, that death was within the scope of the risk created by her actions. It is also within the realm of common knowledge that choking a person, like Mansfield did to Griffith, could naturally result in that person's death. *Compare State v. Herring*, 8th Dist. Cuyahoga No. 46032, 1983 WL 4744, *1 (Sept. 22, 1983) (saying that "[t]he natural and probable consequences of strangling someone until they don't move anymore and the natural and probable result of tying someone up in a carpet and leaving them in an empty lot is that they will die").

{¶ 24} The second assignment of error is overruled.

### III. Conclusion

{¶ 25} The judgment of the trial court is reversed, and the convictions and sentence are vacated. The matter is remanded for a new trial.

. . . . . . . . . . . . .

FAIN, J., and FROELICH, J., concur.

Copies mailed to:

Megan M. Farley
David R. Miles
Hon. Douglas M. Rastatter