[Cite as *State v. Grube*, 2013-Ohio-692.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 12CA7 |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| KANSAS D. GRUBE, | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | **Released: 02/07/13** |

_____
APPEARANCES:

Timothy Young, Ohio State Public Defender, and Katherine A. Szudy, Ohio State Assistant Public Defender, Columbus, Ohio, for Appellant.

C. Jeffrey Adkins, Gallia County Prosecuting Attorney, and Eric R. Mulford, Assistant Prosecuting Attorney, Gallipolis, Ohio, for Appellee.
_____

McFarland, P. J.

{¶1}  Kansas D. Grube appeals her conviction in the Gallia County Court of Common Pleas after a jury found her guilty of one count of aggravated murder and one count of child endangering.  On appeal, Grube contends (1) the trial court violated her rights to due process and a fair trial in the absence of sufficient evidence to convict her of aggravated murder; (2) her constitutional rights were violated when the trial court failed to give a jury instruction as to the lesser-included offenses of reckless homicide and/or involuntary manslaughter; (3) the trial court also erred when it failed

to merge her convictions for aggravated murder and child endangering for purposes of sentencing; and (4) her trial counsel rendered ineffective assistance of counsel.  Upon review, we find the trial court committed plain error in failing to consider whether Appellant's convictions were based on conduct evidencing a single or separate animus, pursuant to the Supreme Court of Ohio's decisions in *State v. Johnson,* 128 Ohio St. 3d 153, 2010-Ohio-6314, 942 N.E.2d 1061 and *State v. Underwood,* 124 Ohio St. 3d 365, 2010-Ohio-1, 922 N.E.2d 923.  Accordingly, we sustain Appellant's third assignment of error and remand to the trial court for further consideration.

FACTS

{¶2}  On February 19, 2010, the Gallia County Grand Jury indicted Kansas Grube on three counts: count one, aggravated murder in violation of R.C. 2903.01(C); count two, murder in violation of R.C. 2903.02(B)(2); and, count three,  endangering children, in violation of R.C. 2919.22(B)(1).   The case proceeded to a jury trial on September 29, 2010, in which Appellant was convicted of aggravated murder and endangering children, but the jury rendered no verdict on the charge of murder.  The trial court sentenced Appellant to life in prison without the possibility of parole for aggravated murder and eight years for endangering children.  She appealed her convictions in *State v. Grube,* 4th Dist. No. 10CA16, 2012-Ohio-2180, in

which this court held because the record was devoid as to any disposition as to count two, murder, the charge remained pending and the trial court's judgment entries finding Appellant guilty and sentencing her were not final appealable orders. Thus, the appeal was dismissed.

{¶3} Appellant next filed a motion for reconsideration, which was denied. However, in our decision, we noted the trial court's filing of a separate entry dismissing count two would be appropriate. On August 21, 2012, the trial court filed a judgment entry dismissing count two. On September 7, 2012, Appellant filed a notice of appeal indicating appeal from the October 4, 2010 judgment entry which became final and appealable as of the August 21st entry disposing of count two. Appellant has now perfected a timely appeal.

{¶4} The events leading up to Appellant's indictment by the grand jury are set forth as follows. In February 2012, Appellant Kansas Grube and her husband Matt Grube (hereinafter "Matt") resided in a mobile home in Gallia County with their 4-year-old daughter H.G. and 2 ½ month old son, J.G. [1] Appellant was a stay-at-home mother and Matt worked the midnight shift at a group home for MRDD patients. During the day, Matt usually slept and Appellant cared for the children. On February 12, 2010, Matt left

---

[1] Matt Grube also has six and eleven-year-old sons from prior relationships.

for work sometime between 10:30 and 10:45.  Ten minutes after he left, he received a call from Appellant indicating J.G. was not breathing.   When Matt returned home, he began administering CPR to J.G. Shortly thereafter, medical personnel and Sergeant Eric Werry, responded to the 911 call.  J.G. was transported to Holzer Medical Center, where he was pronounced dead later in the evening. J.G. had no visible injuries.

{¶5} Dr. Daniel Whiteley, the Gallia County Coroner was called to the Holzer ER.  Dr. Whitely initially opined J.G. died from sudden infant death syndrome (SIDS). Pursuant to Ohio law, Dr. Whitely ordered an autopsy. The autopsy, performed by Dr. Russell Uptegrove revealed J.G. had two skull fractures, one in the left posterior parietal area and one in the right occipital area.  Based on this report, Dr. Whitely determined to a reasonable degree of medical certainty J.G.'s death was a homicide.  He advised the local authorities.  Detective Chad Wallace obtained a search warrant for the Grube residence and took the Grubes to the Gallia County Sheriff's Department for questioning.   Appellant gave a videotaped statement and was eventually charged with aggravated murder, murder, and felony child endangering.

*THE STATE'S CASE*

{¶6} When the matter came on for trial, the State of Ohio presented testimony from Detective Wallace, Sgt. Werry, Dr. Whitely, Dr. Uptegrove, Dr. Phillip Scribano, Crystal Sowards, and Matt Grube. The doctors opined J.G. died from two blunt force traumas to the skull. Dr. Scribano testified as an expert on pediatric child abuse.

{¶7} The substance of Crystal Sowards' testimony was that she had previously known Appellant and her husband from working with Matt in the past, and from "Drug Court," in which Appellant and she had participated. Crystal Sowards was also incarcerated in the Gallia County jail the night Appellant was questioned and held. Appellant related to Crystal Sowards several explanations for what may have caused J.G.'s injuries and death.

{¶8} Matt Grube testified on the day of J.G.'s death, slept the entire day until 9:00 p.m., his normal routine. When he awoke he prepared for work, fixed a toilet problem, and went to get cigarettes for Appellant and himself around 10:00 p.m. He was gone approximately ten minutes. When he returned, he finished getting ready, gave Appellant a kiss, and left around 10:30 p.m. When he left for work, Matt noticed J.G. was lying asleep on the living room couch. At approximately 10:38 Matt received a call from Appellant telling him J.G. was dead. He immediately returned home and began performing CPR on J.G. Appellant was speaking to 911 when he

returned.  Soon after, Stella Blanton, a relative, arrived and Matt gave J.G. to her to perform CPR. An emergency squad and law enforcement also arrived. J.G. was eventually transported to Holzer ER.

{¶9}  Matt described Appellant as a loving mother. He denied marital problems.  He acknowledged a  2008 arrest for domestic violence involving Appellant. He also acknowledged having gone through Drug Court for abuse of pain medication. Matt's testimony revealed he knew Detective Wallace from high school.

{¶10} The State also played for the jury Appellant's videotaped statement given to Detective Wallace on February 13, 2010.  During her statement, Appellant described the events of the day J.G. similar to her testimony at trial, given below.  She stated Matt was asleep all day. She repeatedly denied hurting J.G., beating J.G., being "rough" with him, or hurting any child.  She stated she was being truthful.  Appellant indicated she had taken her prescribed medication on the day of the interview, but stated it did not affect her thought processes. When Appellant "could not remember" certain events or time frames which transpired on the day J.G. died, she stated "I don't remember, I'm prescribed Xanax and I took it yesterday."  Towards the end of the interview, Appellant admitted she was "rough" with J.G. when she gave him his bottle, and his head hit the wooden

part of the couch.  At one point in the interview, Appellant stated "I didn't do this shit on purpose."

*THE DEFENSE CASE*

{¶11}  Appellant elected to testify at trial, and her testimony did not portray Matt or their marriage in a positive light. She indicated Matt and his family had tried to get her to abort J.G.  She testified Matt was trying to give up the rights to his other children.  Appellant testified Matt had a temper, there were various incidents of domestic violence which she never reported, and he had left bruises and marks on her and the children.

{¶12}  Appellant's version of the events of February 12, 2012, was that she had played with the children, done household chores, and watched television and played on the computer during the day. She testified J.G. had been asleep during the day and he awoke around 4:00 p.m.  She fed, changed, and played with him.  She tried to keep the children quiet while Matt slept, because he would get very upset and curse at them. Around 6:00 p.m., J.G. went back to sleep and he slept for 4-5 hours. Appellant testified J.G. liked to sleep on his side.  She placed him on the couch with a pillow between him and the back of the couch.  During that period of time, Appellant did laundry, dishes, smoked outside or in the bathroom, and used the computer.

{¶13} Appellant testified Matt awoke around 9:00 p.m. when H.G. began jumping on his bed. After Matt awoke, she heard him in various other rooms of the home. She was in the bathroom cleaning. Appellant testified she was unaware Matt left the home for cigarettes, and she denied asking him to get them. She was unaware when Matt returned from the convenience store. During this time, when she walked through the living room, she could still see J.G. sleeping on the couch. Appellant testified she did not see Matt touch J.G. that night, but she was not with him every minute in every room.

{¶14} Appellant testified Matt's routine was to kiss her and the children when he left for work. On the night in question, she was at the computer, when he kissed her and H.G., but did not kiss J.G. She testified he seemed nervous, stopping and staring at the children before he left. After Matt left, Appellant closed out items on her computer, went to the restroom, and came back to check on J.G. She then noticed he was not breathing. Appellant had noticed earlier the pillow was no longer behind him. Appellant immediately called Matt. She next called her grandfather, who knew CPR, and 911. Appellant, Matt, and the extended family eventually ended up at the Holzer ER where they were later told J.G. had died of SIDS.

{¶15} After Appellant left the hospital, she went to her grandfather's house for a few hours. Matt picked her up around 4:00 a.m. or 5:00a.m. on

February 13th.   They went to Walmart to pick up computer cleaner, and then home.  Appellant was sleeping throughout the day.  At approximately 2:00 p.m. or 3:00 p.m. Matt brought her three pills that she had been prescribed.  Shortly afterwards, Detective Wallace arrived and she went with him voluntarily to the Gallia County Sheriff's Department.  Appellant testified she was on probation and thought his visit was probation-related.

{¶16} Regarding her statement to Detective Wallace, Appellant testified she was not paying attention to what he said to her because of the medication she had just taken and because she had just lost her son. Appellant testified she felt Detective Wallace was "putting words in her mouth," and she "went along with things" because she was sad and wanted to go home. Appellant testified although she admitted to hurting J.G. on the video, it was not true.

{¶17}  Appellant testified that J.G. fell out of her arms at the consignment shop on the day before.  She rushed him to Matt, and Matt said J.G. was fine. She testified, partly due to the length of time since the events occurred and partly because of her medication, there were a lot of things she had blocked out and did not remember.

{¶18} Samuel Eisenaugle, Appellant's grandfather, Stella Blanton, Appellant's aunt by marriage, and Heidi Van Hoose, Appellant's step-

mother testified on Appellant's behalf.  The substance of their testimony was that Appellant was a loving mother who had cared for other children in the past.   They testified they had never seen her hurt a child. Appellant's witnesses acknowledged they were not present at Appellant's home on the day of J.G.'s death.

ASSIGNMENTS OF ERROR

I.  THE TRIAL COURT VIOLATED KANSAS GRUBE'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN, IN THE ABSENCE OF SUFFICIENT EVIDENCE, IT ENTERED A JUDGMENT ENTRY, CONVICTING KANSAS OF AGGRAVATED MURDER.

II. THE TRIAL COURT VIOLATED KANSAS GRUBE'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT FAILED TO GIVE THE JURY AN INSTRUCTION AS TO THE LESSER-INCLUDED OFFENSES OF RECKLESS HOMICIDE AND/OR INVOLUNTARY MANSLAUGHTER.

III. THE TRIAL COURT ERRED WHEN IT IMPOSED SEPARATE SENTENCES FOR OFENSES THAT AROSE FROM THE SAME CONDUCT, WERE NOT COMMITTED SEPARATELY OR WITH A SEPARATE ANIMUS, AND SHOULD HAVE BEEN MERGED FOR SENTENCING PURPOSES UNDER R.C. 2941.25.

IV. TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

ASSIGNMENT OF ERROR ONE

{¶19}  Under the first assignment of error, Appellant argues

there was insufficient evidence to convict her of the aggravated murder of J.G. Appellant contends there was no evidence presented that she acted purposefully to cause J.G.'s injuries and death. Appellant cites her testimony that she dropped her child the day before while they were in a consignment shop as evidence of recklessness only. She essentially argues she was convicted due to the testimony of Dr. Phillip Scribano, who related that the scientific research and literature regarding child abuse identifies substance use as a significant risk factor for child abuse. For the reasons which follow, we disagree with Appellant.

## A. STANDARD OF REVIEW

{¶20} In reviewing for sufficiency of evidence, appellate courts look to the adequacy of the evidence and whether the evidence, if believed, supports a finding of guilt beyond a reasonable doubt. See *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997); *State v. Jenks,* 61 Ohio St. 3d 259, 273, 574 N.E.2d 492 (1991). In other words, after viewing the evidence and all inferences reasonably drawn therefrom in the light most favorable to the prosecution, could any rational trier of fact have found all essential elements of the offenses beyond a reasonable doubt? *State v. Hancock,* 108 Ohio St. 3d 57, 840 N.E.2d 1032, 2006-Ohio-160, at ¶ 34; *State v. Jones,* 90 Ohio St. 3d 403, 417, 739 N.E.2d 300 (2000). The

sufficiency of the evidence test "raises a question of law and does not allow us to weigh the evidence." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Instead, the sufficiency of the evidence test "'gives full play to the responsibility of the trier of fact [to fairly] resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *State v. Thomas,* 70 Ohio St. 2d  79-80, 434 N.E.2d 1356 (1982); *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E. 2d 212 (1967), paragraph one of the syllabus.

## B. LEGAL ANALYSIS

{¶21} The jury convicted Appellant of aggravated murder, R.C. 2903.01 (C) which is defined as follows: "[no] person shall purposely cause the death of another who is under thirteen years of age at the time of the commission of the offense. " The code defines "purposely" as "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22 (A). Appellant argues there was no evidence she acted purposely to cause the death of her baby and that without the testimony of Dr. Scribano, she would not have been convicted. However, we believe even if the

testimony of Dr. Scribano had been excluded, there was sufficient evidence that any rational trier of fact could have found all essential elements of aggravated murder proven beyond a reasonable doubt.

{¶22} First, the jury heard evidence from three medical experts that J.G. died as a result of two separate blunt force injuries to the head. Dr. Dan Whitely, the Gallia County Coroner, testified when he arrived at the Holzer Medical Center ER, J.G. had already been pronounced dead and had no visible bruises or injuries. Early on, Dr. Whitely opined J.G. had died of sudden infant death syndrome, (SIDS). Because J.G. was under age two, Dr. Whitely ordered an autopsy which was performed by the Montgomery County Coroner's Office. Based upon the autopsy report received regarding J.G., Dr. Whitely opined to a reasonable degree of medical certainty that the manner of J.G.'s death was homicide.

{¶23} The jury also heard testimony from Dr. Russel Uptegrove, the forensic pathologist who performed the autopsy of J.G. on February 13, 2010. Dr. Uptegrove testified initially, he saw no external signs of injury. During the process of opening J.G.'s scalp, he found two separate large areas of hemorrhage. He found a skull fracture 3 ¾ inches in length in the posterior left parietal region of the head. A second fracture, 1 ½ inches in length was identified on the right hand side of the occipital region. Dr.

Uptegrove testified the significance of the two skull fractures was that two separate blunt impacts to J.G.'s head caused the injuries. He further testified that it takes significant force to fracture a bone in an infant's skull, as opposed to an adult's skull. He opined to a reasonable degree of medical certainty the cause of J.G.'s death was blunt force injury of the head. On cross-examination, Dr. Uptegrove further opined that the lack of external injury or bruising was due to the short interval between onset injury and death, most likely under one hour.

{¶24} Dr. Phillip Scribano, the expert in pediatric emergency medicine and pediatric child abuse who reviewed the case, also testified on behalf of the State. Dr. Scribano reviewed medical records, investigative reports, a video recording of the interview with Kansas Grube, the coroner's report, and literature regarding the statistics of child abuse by caregivers who are drug dependent. Dr. Scribano testified the literature indicates two-thirds of deaths that are reviewed formally identify substance use in a caregiver as a contributing factor in the deaths of children.

{¶25} Dr. Scribano also testified J.G.'s injuries were the result of severe physical abuse. He opined the injuries were not from routine household falls common to children, but from some type of forceful or violent episode. He testified significant force would cause the types of

fractures in an infant's skull. He stated the injuries were worrisome in any infant who did not have a history of a high speed motor vehicle crash or a fall from windows several stories in height.

{¶26} Appellant's trial strategy was to try to create reasonable doubt and shift blame to her husband, Matt Grube. During the interview with Detective Wallace, Appellant indicated her husband was asleep the entire day prior to J.G.'s death. However, at trial, she tried to create a window of opportunity for Matt to have harmed J.G. At trial, she admitted she never saw Matt touch the baby that night, but also stated she was not with him at every minute in every room. She testified Matt woke up for work around 9:00 and during that hour of time, she was working around the house and did not even know he had left to go to a convenience store to get cigarettes. Appellant testified that Matt did not kiss the baby as he usually did each night. In closing, counsel argued that during the hour Matt was up and left for work, he had the opportunity to cause J.G.'s death. Counsel emphasized Kansas was busy doing household chores and could account for everything she did.

{¶27} During the course of the investigation, Appellant offered several different scenarios as to how J.G. might have been seriously injured, and these scenarios came to light at trial. The jury heard Appellant's

videotaped interview with Detective Wallace. During the interview, Appellant suggested various causes for J.G.' s injuries, including: (1) Appellant tripped over her cat a week before while she was holding J.G.; (2) the day before his death, while the family was at a consignment shop, J.G. slipped out of her arms and hit his face; (3) earlier on the day of his death, while Appellant was giving J.G. his bottle, she accidentally hit his head off the back of the couch; (4) two days before his death, while Appellant was opening the keyboard to the computer, it hit J.G.'s head; (5) some time prior to his death, the back of J.G.'s head hit the metal part of the bassinette while she was placing him in it; (6) some time prior to J.G.'s death, when Appellant was cleaning, she threw a big candle onto the couch and it may have hit J.G. Towards the end of the interview, Appellant admitted being "rough" with J.G. when she was holding him and put his bottle in his mouth. She stated his head flopped back and hit the chair. At trial, however, Appellant denied being rough with J.G.

{¶28} The jury also heard testimony from Crystal Sowards, Appellant's cellmate in the Gallia County Jail on February 13th. Sowards testified she asked Appellant why she was there and she responded that her baby had died. Ms. Sowards asked her what happened. She testified Appellant told her various different versions of what happened, throughout

that night, including:  (1)  she didn't know what happened; (2)  she "F****d up"; (3)  she didn't remember what happened; (4) she was cleaning house and may accidentally have hit J.G. with a candle; (5)  she, H.G., and the baby were sitting on the couch playing with toys and one might have accidentally hit J.G.; and, (6) she discovered J.G. between the cushion and the arm of the couch and his breathing was labored.

{¶29}  It is true the Gallia County jury heard mostly circumstantial evidence.  Assuming for argument Dr. Scribano's testimony should have been excluded, there was still overwhelming evidence by three experts that J.G.'s injuries were caused by two separate blunt force traumas to his skull, that these injuries were not caused by typical household falls, and that the onset of death was brief, likely seconds to one hour.  Appellant admitted to Detective Wallace in her videotaped interview 7 months prior to trial that she was the sole caregiver responsible for J.G. on the day of his death.  Matt Grube testified at trial that he slept all day and had no contact with J.G. before leaving for work.

{¶30}  "[D]irect evidence of a fact is not required.  Circumstantial evidence * * * may also be more certain, satisfying, and persuasive than direct evidence." *State v. Lott,* 51 Ohio St. 3d 160, 555 N.E.2d 293 (1990), citing  *Michalic v. Cleveland Tankers,* Inc., 364 U.S. 325, 330, 81 S. Ct. 6,

10 (1960), citing *Rogers v. Missouri Pacific RR Co*, 352 U.S. 500-508, fn 17, 77 S Ct. 443, 449, fn 17 (1957).  Murder convictions and death sentences can rest solely on circumstantial evidence.  *State v. Apanovitch,* 33 Ohio St. 3d 19, 514 N.E.2d 394 (1987); *State v. Nicely*, 39 Ohio St. 3d 147, 151, 529 N.E.2d 1236, 1239 (1988).

{¶31}  A jury sitting as the trier of fact is free to believe all, part or none of the testimony of any witness who appears before it.  See *State v. Long,* 127 Ohio App.3d 328, 335, 713 N.E.2d 1 (April 22,1998); *State v. Nichols,* 85 Ohio App.3d 65, 76, 619 N.E.2d 80 (Jan. 13, 1993).  A jury is in the best position to view the witnesses and to observe witness demeanor, gestures and voice inflections, and to use those observations to weigh credibility.  See *Myers v. Garson,* 66 Ohio St. 3d 610, 615, 614 N.E.2d 742 (1993); *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).  Appellate courts should not generally second guess juries on matters of weight and credibility.  See *State v. Vance,* 4th Dist. No. 03CA27, 2004-Ohio-5370, 2004 WL 2260498, at ¶ 10.

{¶32}  In this matter, the jury was entitled to believe or disbelieve the testimony of the various witnesses.  The jury was in the best position to assess demeanor and credibility.  The jury apparently did not find credible Appellant's version of the events transpiring prior to J.G.'s injuries and

death. We will not second-guess their determinations.  We believe there was

sufficient evidence to support a finding, beyond a reasonable doubt, that

Appellant committed aggravated murder by purposely causing the death of

J.G.  As such, we overrule Appellant's first assignment of error.

## ASSIGNMENT OF ERROR TWO

{¶33}  Appellant also argues she was deprived of a fair trial and

plain error occurred when the trial court failed to give the jury an instruction

as to the lesser-included offenses of reckless homicide and/or involuntary

manslaughter.  Appellant contends she was entitled to the instruction due to

the State's failure to prove she acted purposefully. She submits, had Dr.

Scribano's alleged prejudicial testimony been excluded, there would have

been no evidence to support the aggravated murder charge.  The plain error

standard of review is appropriate in that Appellant did not request the lesser-

included offenses instruction at trial.

## A. STANDARD OF REVIEW

{¶34}  Notice of plain error under Crim R. 52(B) is to be taken

with the utmost of caution, under exceptional circumstances and only to

prevent a manifest miscarriage of justice.  See, e.g., *State v. Barnes,* 94 Ohio

St.3d 21, 27, 759 N.E.2d 1240 (2002); *State v. Hill*, 92 Ohio St.3d 191, 196,

749 N.E.2d 274 (2001).  Plain error should not be invoked unless it can be

said that, but for the error, the outcome of the trial would clearly have been

otherwise.  See, e.g., *State v. Jackson,* 92 Ohio St.3d 436, 438, 751 N.E.2d

946 (2001); *State v. Sanders*, 92 Ohio St.3d 245, 263, 750 N.E.2d 90 (2001).

{¶35}  The failure to object to a jury instruction waives any

claim of error relative to that instruction unless, but for the error, the

outcome of the trial clearly would have been otherwise.  *State v. Barrett,* 4th

Dist. No. 03CA2889, 2004-Ohio-2064, 2004 WL 878002, at ¶ 26; *State v.*

*Nolling*, 98 Ohio St. 3d 44, 781 N.E.2d 88 (2002).

## B.  LEGAL ANALYSIS

{¶36}  R.C. 2945.74 provides:

" * * * When the indictment or information charges an offense,
including different degrees, or if other offenses are included within the
offense charged, the jury may find the defendant not guilty of the degree
charged but guilty of an inferior degree thereof or lesser included offense.* *
*" *State v. Kidder,* 32 Ohio St.3d 279, 513 N.E.2d 311 (1987).  See, also,
Crim.R.31(C).

A criminal defendant is entitled to a lesser-included-offense instruction,

however, only where the evidence warrants it.  *Kidder*, **314, citing *Beck v.*

*Alabama,* 447 U.S. 625, 636, fn 12, 100 S. Ct. 2382, 2389, fn 12 (1980);

*Keeble v. United States,* 412 U.S. 205, 93 S. Ct. 1993 (1973); *State v. Kilby,*

50 Ohio St. 2d 21, 361 N.E. 2d 1336 (1977); *State v. Nolton,* 19 Ohio St. 2d 133, 249 N.E. 2d 797 (1969).

> "To clarify the entire lesser-included-offense analysis, for purposes of R.C. 2945.74: an offense may be a lesser included offense of another only if (i) the offense is a crime of lesser degree than the other, (ii) the offense of the greater degree cannot, as statutorily defined, ever be committed without the offense of the lesser degree also being committed, and (iii) some element of the greater offense is not required to prove the commission of the lesser offense. Even though so defined, a charge on the lesser included offense is not required, unless the trier of fact could reasonably reject an affirmative defense and could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which by themselves would sustain a conviction upon a lesser included offense." *Kidder,* supra.

{¶37} The elements of aggravated murder as defined by R.C. 2903.01(C) are: "[n]o person shall purposely cause the death of another who is under thirteen years of age at the time of commission of the offense." Reckless homicide, R.C. 2903.041(A), relevant in this case, provides: "[n]o person shall recklessly cause the death of another."

{¶38} Reckless homicide is a lesser included offense of aggravated murder. *State v. Daniels*, 8th Dist. No. 93545, 2010-Ohio-3871, 2010 WL 3278778, at ¶ 29; *State v. Hill,* 8th Dist. No. 87645, 2006-Ohio-6425, 2006 WL 3517956, at ¶ 30. However, a defendant's own testimony that he did not intend to kill his victim does not entitle him to a lesser-included offense instruction. *State v. Wright,* 4th Dist. No. 01CA2781, 2002-Ohio-1462,

2002 WL 1666223, (Mar. 26, 2002), at ¶ 26. See *State v. Campbell,* 69 Ohio

St. 3d 38, 48, 630 N.E.2d 339 (1994); *State v. Thomas,* 40 Ohio St. 3d 213,

533 N.E.2d 286 (1988); *State v. Rawlins,* 4th Dist. No. 97CA2539, 1998 WL

961056 (Dec.24,1998). Even though the defendant's own testimony may

constitute some evidence supporting a lesser offense, if the evidence on

whole does not reasonably support an acquittal on the murder offense and a

conviction on a lesser offense, the court should not instruct on the lesser

offense. *Campbell,* 69 Ohio St. 3d at 47, 630 N.E.2d 339; *State v. Shane,* 63

Ohio St.3d 632-633, 590 N.E.2d 272 (May 13, 1992); *Wright,* supra. "To

require an instruction * * * every time 'some evidence,' however minute, is

presented going to a lesser included (or inferior-degree) offense would mean

that no trial judge could ever refuse to given an instruction on a lesser

included (or inferior-degree) offense." *Shane* at 633, 590 N.E.2d 272;

*Wright,* at ¶ 26.

{¶39} Involuntary manslaughter is also a lesser included offense of

aggravated murder. *State v. Johnson*, 8th Dist. No. 94813, 2011-Ohio-

1919, 2011 WL 1582958, at ¶ 51; *State v. Adams,* 7th Dist. No. 08MA246,

2011-Ohio-5361, 2011 WL 4923522, at ¶ 331; *State v. Thomas,* 40 Ohio St.

3d 213, 215, 533 N.E.2d 286 (1988). Involuntary manslaughter, R.C.

2903.04(A), relevant in this case, provides: "[n];o person shall cause the

death of another….as a proximate result of the offender's committing or attempting to commit a felony." The culpable mental state of involuntary manslaughter is supplied by the underlying offense. *Johnson*, supra at ¶ 54, citing *State v. Wilson,* 182 Ohio A pp.3d 171, 2009-Ohio-1681, 912 N.E. 2d 133, motion for delayed appeal granted 123 Oho St. 3d 1505, 2009-Ohio-6210, 917 N.E.2d 809, cause dismissed 124 Ohio St. 3d 1424, 2010-Ohio-20, 919 N.E.2d 748. "Recklessness" is the mental state for child endangering. *State v. McGhee,* 79 Ohio St. 3d 193, 680 N.E. 2d 975 (1997).

{¶40} By way of comparison, in the 8th district appellate case of *State v. Johnson,* supra, the defendant was charged with aggravated murder, with a victim under the age of 13 specification, notice of prior conviction, and repeat violent offender specification. He was also charged with two counts of child endangerment. The case proceeded to a jury trial and Johnson was found guilty of murder and both counts of child endangerment. On appeal Johnson argued he was denied a fair trial because the trial court denied his request for an involuntary manslaughter jury instruction. He sought the involuntary manslaughter instruction based on the predicate felony being child endangerment. In analyzing the case, the appellate court opined the evidence in the case did not support a finding that Johnson acted recklessly, the culpable mental state required for child endangering. The

appellate court noted the evidence presented was that the child died as a result of blunt impacts with excessive force that occurred while the baby was in Johnson's care and not caused by a fall. The court of appeals in *Johnson* held based on the evidence in the record, the trial court did not abuse its discretion by not instructing on involuntary manslaughter.

{¶41} In its analysis, the *Johnson* court considered *State v. Finley,* 1st Dist. No. C-061052, 2010-Ohio-5203, 2010 WL 4243406, wherein the appellate court reached a similar result. In *Finley*, the defendant was charged with aggravated murder, murder, and felonious assault in connection with the death of his girlfriend's young son who was in his care. At trial, defendant requested an involuntary manslaughter instruction which was denied. The appellate court affirmed the trial court's decision, noting that the victim "had been beaten from head to toe and had suffered a severe blunt force injury to his head. Based on the evidence, no jury could reasonably have concluded that [the defendant] inflicted these injuries recklessly * * *."

{¶42} Here, it can be said Appellant's testimony that she did not harm J.G. is self-serving. She was the sole care-giver on the day J.G. was injured and died, and there is no independent evidence in the record to support her testimony. We agree with Appellee that no jury would

reasonably conclude that the two separate blunt force injuries inflicted upon J.G. were reckless.  We find no manifest miscarriage of justice occurred by the trial court's failure to issue lesser-included-offense instructions on reckless homicide and/or involuntary manslaughter. As such, we overrule Appellant's second assignment of error.

## ASSIGNMENT OF ERROR THREE

{¶43}  In her third assignment of error, Appellant contends her convictions for aggravated murder and child endangering should have been merged for sentencing, as allied offenses of similar import, committed by the same conduct and with a single animus.  At trial, Appellant testified only to accidentally dropping J.G. in a consignment shop on February 11, 2010, the day before he died.   She adamantly denied purposely harming J.G. on February 12, 2010.   Appellant did not request the convictions be merged for sentencing.   Appellant now urges the aggravated murder and child endangering convictions were committed by the same conduct and with a single animus. We turn first to a brief review of the case law regarding merger of allied offenses.

## A.  STANDARD OF REVIEW

{¶44} The question of whether offenses should merge under R.C. 2941.25 ordinarily presents a question of law we review de novo. *State v. Delawder*, 4th Dist. No. 10CA3344, 2012-Ohio-1923, 2012 WL 1535771, at ¶ 38, citing *State v. Love,* 4th Dist. No. 10CA7, 2011-Ohio-4147, 2011 WL 3654577, at ¶ 34. Here Appellant failed to object under R.C. 2941.25 at the sentencing hearing. However, the Supreme Court of Ohio has previously held that imposition of multiple sentences in violation of R.C. 2941.25 constitutes plain error. *Delawder,* at ¶ 38. See *State v. Underwood,* 124 Ohio St. 3d 365, 2010-Ohio-1, 922 N.E. 2d 923, at ¶ 31.

## B. LEGAL ANALYSIS

{¶45} The Double Jeopardy Clause of the United States Constitution prohibits multiple punishments for the same offense. *Delawder*, at ¶ 37, citing *Monge v. California,* 524 U.S. 721, 727-728, 118 S. Ct. 2246 (1998). See, also, Section 10, Article I of the Ohio Constitution. To this end, the Ohio General Assembly enacted Ohio's multiple-count statute, which subjects "allied offenses of similar import" to the judicial concept of "merger" at sentencing. *Delawder,* supra.

{¶46} R.C. 2941.25 provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the

indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

R.C. 2941.25 itself instructs courts to look at the defendant's conduct when evaluating whether the offenses are allied. *State v. Johnson,* 128 Ohio St. 3d 153, 942 N.E. 2d 1061 (2010). Courts have consistently recognized the purpose of R.C. 2941.25 is to prevent shotgun convictions, that is, multiple findings of guilty and corresponding punishments heaped on a defendant for closely related offenses arising from the same occurrence. *Johnson,* supra at ¶ 43; *Maumee v. Geiger,* 45 Ohio St. 2d at 242, 344 N.E.2d 133 (1976). "When, in substance and effect 'but one offense has been committed,' the defendant may be convicted of only one offense." *Johnson,* supra, citing *State v. Botta,* 27 Ohio St. 2d at 203, 271 N.E.2d 776 (1971). When determining whether two offenses are of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. *Johnson, supra* at ¶ 44.

{¶47} Under the Supreme Court of Ohio's analysis in *Johnson,* the first question is whether it is possible to commit one offense and commit the

other with the same conduct.  If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one of the offenses also constitutes commission of the other, then the offenses are of similar import.  Then, "[i]f the multiple offenses can be committed by the same conduct, the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Johnson,* supra at ¶ 49, citing *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).   If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged. *Johnson,* supra at ¶ 50.

{¶48}  The *Johnson* court further opined "Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then according to R.C. 2941.25(B), the offenses will not merge." *Johnson,* at ¶ 51.  In *Johnson*, the Supreme Court of Ohio concluded the crimes of felony murder and child endangering, as related to defendant's conduct, were allied offenses and thus subject to merger.

{¶49}  In this case, Appellant was convicted of aggravated murder, under R.C. 2903.01(C) and child endangering, under R.C. 2919.22 (B)(1).

R.C. 2903.01(C), as already indicated above, provides: "[n]o person shall purposely cause the death of another who is under thirteen years of age at the time of commission of the offense." Child endangering, pursuant to R.C. 2919.22(B)(1) states: "[n]o person shall do any of the following to a child under eighteen years of age * * *(1) [a]buse the child."

{¶50} Appellee urges reliance on *State v. Porosky*, 8th Dist. No. 94705, 2011-Ohio-330, 2011 WL 365588. There the defendant was charged with various crimes involving his young son, including felonious assault and child endangering. Porosky entered into a plea agreement with the state in which he agreed to plead guilty to felonious assault, child endangering, and domestic violence. At the sentencing hearing, Porosky argued that his convictions for felonious assault and child endangering should merge as allied offenses. The trial court disagreed. On appeal, he argued the trial court erred when it failed to conduct a hearing to determine whether convicting [Porosky] for both felonious assault and child endangering would be in violation of R.C. 2941.25(allied offenses) and a denial of his rights to protection from double jeopardy guaranteed by the Ohio Constitution and the Fifth and Fourteenth amendments to the United States Constitution. The appellate court discussed the analysis to be applied since the Ohio Supreme Court's decision in *Johnson,* supra. The *Porosky* court ultimately held that

Porosky committed his crimes with separate animus since he first harmed his son (the felonious assault) and then endangered him by failing to seek medical attention for approximately 12 hours.

{¶51} As touched-on above, the culpable mental state for aggravated murder is purposefulness. A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish, thereby, it is his specific intention to engage in conduct of that nature. R.C. 2901.22(A). The culpable mental state for child endangering is recklessness. *State v. McGhee,* 79 Ohio St.3d 193, 680 N.E.2d 975 (1997). A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist. R.C. 2901.22(C). It is possible to commit aggravated murder and child endangering with the same conduct. The offenses of aggravated murder and child endangering are so alike that the same conduct can subject an accused to potential culpability

for both.  As to the first prong of the *Johnson* test, it would appear

Appellant's convictions should be merged.

{¶52}  However, here, the trial court never considered the second part

of the test by determining whether the offenses were in fact committed by

the same conduct, i.e. committed as a single act with a single state of mind.

The evidence at trial demonstrated J.G. died by two separate blunt force

impacts to J.G.'s skull. Appellant admitted to only accidentally dropping

J.G. in the consignment shop on February 11th.  J.G. was discovered not

breathing late in the day on February 12th. Appellant urges us to find the

convictions were committed at the same time and with the same animus.

We believe, as in *Delawder,* supra at ¶ 41, this matter should first be

considered by the trial court.   On remand, the court must consider whether

the child endangering in count three was committed separately and with a

separate animus from the aggravated murder charge in count one.  If the

offenses were not committed with a single state of mind, they will not be

merged.  This may be a difficult determination to make, based on our review

of the evidence contained in the record. Accordingly, we sustain Appellant's

third assignment of error and remand with the instructions outlined above.

ASSIGNMENT OF ERROR FOUR

{¶53}  Appellant contends she was denied effective assistance

of counsel due to various errors of her trial counsel and cumulative error.

Based upon a review of the record, we disagree.

## A.  STANDARD OF REVIEW

{¶55}  Criminal defendants have a right to counsel, including a right to effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 770, 90 S. Ct. 1441 (1990); *State v. Stout,* 4th Dist. No. 07CA5, 2008-Ohio-1366, 2008 WL 757521, ¶ 21.  To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance deprived him of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052 (1984); *State v. Issa,* 93 Ohio St. 3d 49, 67, 752 N.E. 2d 904 (2001); *State v. Goff,* 82 Ohio St. 3d 123, 139, 694 N.E. 2d 916 (1998).  "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation.  To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95 (citations omitted).  "Failure to establish either element is fatal to the claim." *State v. Jones,* 4th Dist. No. 06CA3116, 2008-Ohio-968, 2008 WL 613116, ¶ 14.  Therefore, if one element is dispositive, a court need not

analyze both. *State v. Madrigal,* 87 Ohio St.3d 378, 389, 721 N.E.2d 52

(2000) (stating that a defendant's failure to satisfy one of the elements

"negates a court's need to consider the other.").

{¶55} When considering whether trial counsel's representation

amounts to deficient performance, "a court must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." *Strickland,* 466 U.S. at 689. Thus, "the defendant

must overcome the presumption that, under the circumstances, the

challenged action might be considered sound trial strategy." *Id.* at 689. "A

properly licensed attorney is presumed to execute his duties in an ethical and

competent manner." *State v. Taylor,* 4th Dist. No. 07CA11, 2008-Ohio-482,

2008 WL 343328, ¶ 10, citing *State v. Smith,* 17 Ohio St.3d 98, 100 477

N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show

ineffectiveness by demonstrating that counsel's error were so serious that he

or she failed to function as the counsel guaranteed by the Sixth Amendment.

*State v. Gondor,* 112 Ohio St. 3d 377, 2006-Ohio-6679, 860 N.E. 2d 77, ¶

62; *State v. Hamblin*, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

{¶56} To establish prejudice, a defendant must demonstrate that a

reasonable probability exists that but for counsel's error, the result of the

trial would have been different. *State v. White,* 82 Ohio St.3d 16, 23, 693

N.E.2d 772 (1998); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373

(1989), at paragraph three of the syllabus.  Furthermore, courts may not

simply assume the existence of prejudice, but must require that prejudice be

affirmatively demonstrated.  See *State v. Clark,* 4th Dist. No. 02CA684,

2003-Ohio-1707, 2003 WL 1756101, ¶ 22; *State v. Tucker,* 4th Dist. No.

01CA2592, 2002-Ohio-1587, 2002 WL 507529 (Apr. 2, 2002); *State v.*

*Kuntz,* 4th Dist. No. 1691, 1992 WL 42774 (Feb. 26, 1992).

## B.  LEGAL ANALYSIS

{¶57}  (1)  Counsel's failure to object to the testimony of Dr.
         Scribano.

The decision to admit or exclude relevant evidence is within the sound

discretion of the trial court.  *State v. Barrett,* 4th Dist. No. 03CA2889, 2004-

Ohio-2064, 2004 WL 7870002, ¶ 22, citing *State v. Bey,* 85 Ohio St. 3d 487,

490, 709 N.E.2d 484 (1999).  Under assignment of error one, above, we

have discussed Dr. Scribano's testimony at length.  We have determined

that, even if his testimony had been excluded, Appellant's convictions were

based on sufficient other evidence. We further note here Dr. Scribano's

testimony never included a direct or indirect opinion that Appellant was drug

dependent or using drugs at the time of J.G.'s  injuries and/or death.  His

opinion regarding drug use in caregivers who have abused children was

general in nature.  In his testimony on direct, he neither mentioned

Appellant's name nor gave any opinion regarding her actions.   Defense

counsel's failure to object to the Dr. Scribano's testimony regarding

statistical drug usage by abusive caregivers is within the realm of reasonable

trial strategy.  On cross-examination, counsel was able to elicit testimony

from Dr. Scribano, twice, that benzodiazepines are not the types of

substances identified in child abusers.  He explained the purpose of the

benzopdiazeprines or that class of drugs is to address anxiety.  Appellant

indicated in her interview with Chad Wallace that she was prescribed Ativan

for anxiety. [2]  On cross-examination, counsel elicited testimony from Matt

Grube that he had drug usage issues, had been through Drug Court, and his

drugs of abuse were Vicodin or Percocet. It is within the realm of reasonable

trial strategy to have allowed the jury to hear Dr. Scribano's testimony to

suggest Matt as J.G.'s abuser,  a person with an violent history and one of

substance abuse of the types frequently identified in child abusers. We find

no prejudice to Appellant by counsel's failure to object to Dr. Scribano's

testimony.

> {¶58}  (2)  Counsel's failure to object to prior bad/act
> "character" evidence presented through the testimony of Crystal
> Sowards and Detective Wallace.

___

[2] Appellant's use of drugs at the time of J.G.'s injuries and death is not entirely clear.  While there was some testimony she was prescribed Ativan for anxiety, it appears we are to presume the Ativan was an ongoing prescription.  However, the actual testimony regarding her alleged inability to give a clear statement to Chad Wallace was precipitated by testimony that Appellant was given a shot of "something" at the Holzer ER and a prescription containing three pills, "the same thing I was given a shot of"  that she took prior to giving the interview.  Transcript pp. 570-573.

Evid.R. 404(A) provides that evidence of a person's character is not admissible to prove the person acted in conformity with that character. Evid. R. 404(B) sets forth an exception to the general rule against admitting evidence of a person's other bad acts. The Rule states:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶59} Appellant specifically challenges the following alleged character and "other acts evidence from the transcript: (1) Crystal Sowards testimony that she and Appellant knew each other from "Drug Court"; (2) Sowards' testimony that Appellant was under the influence of sedatives when Sowards and others stayed with Appellant, and that she was prescribed Xanax; (3) the videotaped statement in which she acknowledged she was prescribed Ativan; (4) her acknowledgment on the statement that she had "blacked out" before; (5) her acknowledgement on the date of the incident, she had taken Xanax; (6) her acknowledgment to Detective Wallace that she was suicidal, depressed, and supposed to be at a "crazy hospital"; and (7) Detective Wallace's testimony that in his experience, violence was associated with drug addiction or use.

{¶60}  Appellant argues counsel was ineffective when he repeatedly failed to object to the above testimony in violation of Evid.R. 404(A) and 404(B).  Appellant argues that her character as portrayed through the "other acts" evidence was irrelevant to the issue of her guilt and damaged her credibility with the jury. Appellee argues the evidence, was closely and logically related to the act for which Appellant was charged to demonstrate that Appellant had both motive and intent to cause J.G.'s death. See *State v. Roseborough*, 5th Dist. No. 04COA085, 2006-Ohio-2254, 2006 WL 1214952.

{¶61}  We are mindful that "trial tactics or strategies are viewed with the presumption that effective legal counsel was rendered."  *Roseborough, supra* at ¶ 144, citing *State v. Nash,* 8th Dist. No. 1999CA00197, (March 27, 2000), citing *State v. Bradley,* 42 Ohio St. 3d 136, 144, 538 N.E.2d 373 (1989).  Furthermore, "[b]ecause 'objections tend to disrupt the flow of a trial, [and] are considered technical and bothersome by the fact-finder' Jacobs, *Ohio Evidence,* (1989) at iii-iv, competent counsel may reasonably hesitate to object * * *."  *Roseborough,* supra, citing *State v. Jackson,* 8th Dist. No. 86105, 2006 Ohio-174, 2006 WL 134813,  ¶ 88, citing *State v. Campbell,* 69 Ohio St. 3d 38, 53, 1994-Ohio -492, 630 N.E.2d 339 (1994). We are aware that counsel oftentimes prefer to avoid emphasizing

unfavorable testimony by calling undue attention to it by repeatedly posing objections.

{¶62}  We agree with Appellee that the now-objected to testimony assisted the jury by providing a context for the environment in which the murder occurred and the stresses affecting Appellant. We also believe it to be reasonable trial strategy for counsel to have allowed the testimony in furtherance of the defense purposes.  The defense strategy was to portray Appellant as a good mother living with an abusive husband who had used drugs himself in the past. The first five instances of alleged character evidence could have been allowed to further emphasize that Appellant used the type of drugs, Dr. Scribano testified were not typically associated with child abusers.  This testimony could reasonably have been construed by the jury as painting a picture of someone who was genuinely confused and unable to remember specific events, as demonstrated on the videotaped statement.  It was argued, by Kansas in her testimony, and in closing, that she was "saying whatever she thought Chad Wallace wanted her to say." Evidence of the drug use supported a characterization of a person who was not thinking clearly and unfairly swayed by law enforcement in her statement during the interview.   As to Appellant's statement regarding suicide, depression, and the "crazy hospital," it could have been reasonable

trial strategy to allow this evidence to show a grieving mother and, again, a person misled by law enforcement. Detective Wallace's testimony about the relationship between drugs and violence could reasonably have been used to bolster the testimony eventually elicited from Matt Grube, that he had also attended Drug Court, had been charged with a violent crime in the past, and used prescription drugs.

{¶63} In this matter, we are unwilling to conclude that alleged unfair and prejudicial testimony was so clearly unreasonable as to amount to error. We do not find it likely that but for the admission of this evidence, the outcome of Appellant's trial would have been different. Had the alleged character and "bad act" evidence been excluded, ample circumstantial evidence existed to support Appellant's convictions. See assignment of error one. We find Appellant has not demonstrated prejudice which deprived her of a fair trial.

{¶64} (3)  Counsel's failure to renew its Crim. R. 29 motion at
           the end of Kansas Grube's case-in-chief.

The standard of review for a Crim.R. 29(A) motion is generally the same as a challenge to the sufficiency of the evidence. *State v. Hollis,* 4th Dist. No. 09CA9, 2010-Ohio-3945, 2010 WL 3294327, ¶19. See *State v. Hairston,* 4th Dist. No. 06CA3081, 2007 Ohio-3880, 2007 WL 2181535,

at ¶ 16; *State v. Brooker,* 170 Ohio App.3d 570, 2007-Ohio-588, 868 N.E.2d

683, at ¶8.  Appellate courts must determine whether the evidence adduced

at trial, if believed, supports a finding of guilt beyond a reasonable doubt.

See *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d

541; *State v. Jenkins,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

{¶65}  Appellant was convicted of aggravated murder, R.C.

2903.01(C), which, again, states "[no] person shall purposely cause the

death of another who is under thirteen years of age at the time of

commission of the offense."  She was also convicted of child endangering,

also set forth above, which, relevant to this case, essentially states no one

shall abuse a child under the age of eighteen.  As discussed at length in

assignment of error one, we find the jury had sufficient evidence to convict

Appellant of aggravated murder. Likewise, the record revealed sufficient

evidence to convict Appellant for creating substantial risk of harm to her

child. Because there was sufficient evidence to convict Appellant, the failure

to renew the Rule 29 motion is not erroneous.  See also *State v. Stout,* 4th

Dist. No. 07CA5, 2008-Ohio-1366, 2008 WL 757521, fn 8.

{¶66}  (4)  Counsel's failure to request jury instructions on the lesser- included- offenses of reckless homicide and manslaughter.

We have previously discussed in assignment of error two our conclusion that J.G's injuries were caused by two blunt force traumas to his skull and that no jury could have found these injuries to be caused recklessly, therefore the evidence did not warrant giving the lesser-included instructions.   As such, counsel did not err in failing to request them.

{¶67}  Moreover, we point out in *State v. Delawder,* appellant contended that trial counsel should have requested a jury instruction or objected to the trial court's failure to instruct the jury on involuntary manslaughter as a lesser included offense of aggravated felony murder and murder charges.  This court noted even if it presumed Delawder qualified for such an instruction, a failure to request a jury instruction on a lesser included offense is presumed to be a matter of trial strategy and therefore, does not establish ineffective assistance of counsel.   *State v. Murphy*, 4th Dist. No. 07CA2953, 2008-Ohio-1744, at ¶ 36.   Delawder argued: (1) it could not be said that foregoing the instruction was a strategic decision and (2) a conviction for involuntary manslaughter would have been an "appropriate outcome."  This court held even, if true, [that fact would not preclude the possibility of counsel making a strategic decision to use an "all or nothing" approach (guilty or not guilty on the charged offenses, rather than giving the jury the option of convicting on a lesser included offense. *Delawder* at ¶ 51.

{¶68}  At trial, Appellant repeatedly denied harming her child and cast aspersions in the direction of her husband. It is reasonable trial strategy in this case for Appellant to have "gambled" on an "all or nothing" approach.  We find no error in counsel's possibly strategic decision to forego the now- requested jury instructions on lesser-included offenses of reckless homicide and involuntary manslaughter.

{¶69}  (5)  Counsel's failure to argue merger of allied offenses
                for purposes of sentencing.

We have sustained Appellant's assignment of error three above, wherein Appellant argued her convictions were allied offenses which should have been merged for sentencing.  We have remanded this case for the trial court's determination as to whether Appellant's convictions were based on a single act or whether they involved a separate animus for each conviction. As such, we determine the ineffective assistance argument raised under this subsection is moot and thus, we decline to address it in accordance with App.R. 12(A)(1)(c).  See *State v. Haught,* 4th Dist. No. 10CA34, 2011-Ohio-4767, 2011 WL 4361526; *State v. Burns,* 4th Dist. Nos. 08CA1, 08CA2, 08CA3, 2009-Ohio-878, 2009 WL 485374.

{¶70}  (6)  Cumulative error.

"Before we consider whether 'cumulative errors' are present, we must first find that the trial court committed multiple errors."  *State v. Wharton,*

4th Dist. No. 09CA3132, 2010 Ohio-4775, 2010 WL 3835644, at ¶ 46,

citing *State v. Harrington,* 4th Dist. No. 05CA3038, 2006-Ohio-4388,  2006

WL 2457218, at  ¶ 57, citing *State v. Goff,* 82 Ohio St. 3d 123, 140, 1998-

Ohio-369, 694 N.E. 2d 916.

{¶71}  *Strickland* directs us to look at the "totality of the evidence

before the judge or jury," keeping in mind that "[s]ome errors will have had

a pervasive effect on the inferences to be drawn from the evidence, altering

the entire evidentiary picture * * *."  *State v. Gondor,* 112 Ohio St. 3d 377,

860 N.E. 2d 77 (2006), citing *Strickland,* 466 U.S. at 695-696, 104 S. Ct.

2052 (1984).  We therefore consider these errors in the aggregate.  *Gondor,*

supra citing *State v. De Marco*, 31 Ohio St. 3d 191, 196, 509 N.E. 2d 1256

(1987).  See, also, *Moore v. Johnson* (C.A.5 1999), 194 F.3d 586, 619 (court

should examine cumulative effect of errors committed during both trial and

sentencing); *Stouffer v. Reynolds* (C.A. 10, 1999), 168 f.3d 1155, 1163-1164

("Taken alone, no one instance establishes deficient representation.

However, cumulatively, each failure underscores a fundamental lack of

formulation and direction in presenting a coherent defense").  We find the

cumulative error principle inapplicable in this matter.

{¶72}  As discussed above, we cannot find Appellant was prejudiced

by his counsel's (1) failure to object to the alleged character and "other acts"

evidence presented by Crystal Sowards and Detective Wallace; (2) failure to object to the alleged problematic testimony of Dr. Scribano;  (3) failure to renew the Crim.R. 29 motion at the end of Appellant's case-in-chief; and, (4) failure to request jury instructions on lesser included offenses. We further find no cumulative error.  Based on the discussion above, we cannot find Appellant received constitutionally ineffective assistance of counsel under the *Strickland* analysis.  As such, we overrule Appellant's fourth assignment of error.

## CONCLUSION

{¶73}  Having sustained Appellant's third assignment of error, the judgment is affirmed in part and reversed in part.  The portion of the trial court's order sentencing Appellant to life imprisonment without parole as to count one, aggravated murder, and sentencing her to eight years imprisonment for count three, endangering children, to be served consecutively, is hereby vacated and this issue remanded for further proceedings consistent with this opinion.

JUDGMENT AFFIRMED IN
PART, REVERSED IN PART,
AND CAUSE REMANDED
FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS
OPINION.

Kline, J., dissenting, in part.

{¶74} I respectfully dissent as to the third assignment of error. Here, I dissent for the same reasons I dissented in *State v. Isbell*, 4th Dist. No. 12CA3313, 2012-Ohio-6267, ¶ 7. "Therefore, instead of remanding this case to the trial court, I would apply the merger test and determine whether the trial court did in fact err." *Id.*

{¶75} Furthermore, I respectfully concur in judgment only as to the rest of the opinion. Although I generally agree with the principal opinion's analysis, I would have overruled the first, second, and fourth assignments of error in *State v. Grube*, 4th Dist. No. 10CA16, 2012-Ohio-2180. In my view, the present appeal was unnecessary. *See id.* at ¶ 9-11.

{¶76} Accordingly, I respectfully dissent as to the third assignment of error, and I respectfully concur in judgment only as to the rest of the opinion.

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, J.:   Concurs in Judgment Only.
Kline, J.:    Concurs in Judgment Only with Opinion as to Assignments of
              Error I, II, & IV; Dissents with Opinion as to Assignment of
              Error III.


For the Court,

BY:  _____
     Matthew W. McFarland
     Presiding Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**